BLALOCK v. EQUITABLE LIFE ASSUR. SOC. OF THE UNITED STATES.

(Circuit Court, N. D. Georgia. November 6, 1895.)

1. PLEADING—LEGAL AND EQUITABLE CAUSES—JURISDICTION OF COURTS.

Plaintiff, as administrator of one W. B. brought an action against a life insurance company, in a state court possessing only common-law jurisdiction, and in his petition alleged that the insurance company had issued a policy on the life of one C. B., for the benefit of W. B., for $5,000; that while both C. B. and W. B. lay sick, and near death, agents of the insurance company visited them, and by falsely and fraudulently representing that the insurance company was in possession of evidence which would avoid the policy, that it would resist payment thereof, and make great trouble for the representatives of C. B. and W. B., and by urgent and persistent solicitations, which C. B. and W. B. were unable, in their feeble condition, to resist, persuaded them to agree to a cancellation of the policy, in consideration of a payment of $2,500, and that the company had refused to pay the balance of the policy, or to accept proofs of C. B.'s death. Thereupon plaintiff prayed judgment for the $2,500, with interest and penalties, and that the policy be brought into court, and delivered up, and the agreement of cancellation set aside, and offered to credit upon the policy the $2,500 paid to C. B. and W. B. The insurance company demurred to the petition, and the case was removed to the United States circuit court. *Held*, that the case made by the plaintiff's pleading was substantially an equitable one, of which neither the state court nor the federal court on its law side, to which the case was removed, could take jurisdiction; nor could the allegations, framed for the purpose of

equitable relief, be taken as making out a cause of action for damages for deceit.

**2. SAME—AMENDMENT.**
> *Held*, further, that the plaintiff could not be permitted so to amend his pleading as to change such equitable cause of action for cancellation of the agreement into a cause of action at law for deceit in procuring it.

John L. Hopkins & Sons and Chas. Z. Blalock, for plaintiff.
King & Spalding, for defendant.

NEWMAN, District Judge. This case was removed to this court from the city court of Atlanta. The petition filed by the plaintiff in the city court is as follows:

The petition of John T. Blalock, the duly-appointed administrator on the estate of W. B. Blalock, deceased, respectfully shows to the court the following facts:

(1) That the Equitable Life Assurance Society of the United States; a corporation doing business in the state of Georgia, and in said county, and having and maintaining an office in said county of Fulton for the transaction of business, and having resident in said county of Fulton a legally appointed agent or officer, to wit, Alber Perdue, upon whom the legal process of the courts of said state may be served as by statute required, is indebted to petitioner in the principal sum of twenty-five hundred ($2,500) dollars, besides interest; the same being a balance due upon a policy of insurance issued by said defendant company upon the life of C. W. Blalock, copy of which is hereto attached.

(2) Petitioner shows that said policy was issued upon the life of said C. W. Blalock on the 10th day of June, 1892, for the sum of five thousand ($5,000) dollars, the same being made payable to W. B. Blalock, the brother of the said C. W. Blalock, upon the death of the said C. W. Blalock.

(3) Petitioner shows that the said C. W. Blalock died on the 30th day of January, 1894; and that the said W. B. Blalock died on the 5th day of March, 1894; that petitioner was duly appointed administrator on the estate of the said W. B. Blalock on the 6th day of September, 1894, by the court of ordinary of Upson county, Georgia.

(4) Petitioner shows that since the death of the said C. W. Blalock and W. B. Blalock, and after petitioner's appointment as administrator, as aforesaid, he has frequently demanded of the said defendant company payment of the amount due upon said policy of insurance.

(5) Petitioner shows that the said defendant company have refused, and still refuse, to pay the amount so due, as aforesaid.

(6) Petitioner shows that, after the death of the said insured and beneficiary, and after petitioner was so appointed administrator, he applied to said defendant company for blanks upon which to make the proofs of death, as required by said policy, and that said defendant company failed and refused to furnish said blanks; whereupon petitioner prepared and had executed sufficient legal proof, as required by said policy, of the death of the said C. W. Blalock, and submitted the same to the said defendant company, and it then refused, and still refuses, either to consider said proofs, or to pay the amount due on said policy.

(7) Petitioner shows that said policy was in the possession of the said C. W. Blalock up to about the 27th of January, 1894, in full force and effect, and was a legal and binding obligation existing against the said defendant company, and that all the conditions and requirements incumbent upon and chargeable to the said insured, including the payment of all the premiums due thereon, had been fully and lawfully complied with, by the said C. W. Blalock.

(8) Petitioner shows that on or about the 25th day of January, 1894, one Dr. A. S. Hawes, an agent of said defendant company, came to the house of petitioner, where both the said C. W. Blalock and W. B. Blalock lay fatally sick, and wholly unable to properly consider and attend to business; and, notwithstanding the weak and debilitated condition of the said C. W. Bla-

lock and W. B. Blalock, the said Dr. Hawes began, by the use of artful means and deceitful practices and fraudulent representations, a preconceived scheme of procuring a cancellation of said policy. The said Dr. Hawes insisted on having an interview with the said insured and beneficiary, notwithstanding petitioner. who was present, protested against the same, and stated to the said Dr. Hawes that the said C. W. Blalock and W. B. Blalock were then almost at death's door, and were in no condition to meet the said Dr. Hawes on equal terms in the discussion of this or any other business matter. Petitioner had never seen the said Dr. Hawes before, and, on finding out the nefarious purpose for which he came, insisted that the said C. W. Blalock and W. B. Blalock were too near death's door to discuss any business matter; but the said Dr. Hawes persisted in the purpose for which he came, and falsely informed the said C. W. Blalock and W. B. Blalock that the policy which they held in the said defendant company was absolutely void, and that the said defendant company was not liable thereon, and represented to the said beneficiary and insured that said defendant company was in possession of evidence of fraud in the procurement of said policy that would not only vitiate the same, and prevent a recovery thereon, but would show that the same was obtained by false representations. But the said Dr. Hawes, when called upon to specify the charges of fraud made by said defendant company, refused to tell upon what grounds it demanded a cancellation of the policy. saying that he was not authorized by said defendant company to give the facts in their possession, but that he was advised that the company had such evidence as would make the policy void and uncollectible; and then and there offered first to return the premiums paid, and then offered to pay one thousand ($1,000) dollars, and then seventeen hundred and fifty ($1,750) dollars, in settlement of said policy. And petitioner shows that said Dr. Hawes remained at the house from early in the morning until about nine o'clock at night, at frequent intervals urging and persuading said insured and said beneficiary to compromise and settle said policy.

(9) Petitioner shows that, notwithstanding all the false and fraudulent statements and ingenious arguments used by the said Dr. Hawes upon the said C. W. Blalock and W. B. Blalock, and the great persistency with which he pressed the same, and said C. W. Blalock and W. B. Blalock insisted that they had done no wrong, that there was no fraud in the procurement of said policy, that the said defendant company, in case of insured's death, would be liable for the full amount thereof, and they then and there refused to cancel said policy, or to accept in settlement thereof any of the said offers made by the said Dr. Hawes to compromise or settle said policy; whereupon the said Dr. Hawes left.

(10) Petitioner shows that about three days thereafter the said Dr. Hawes, accompanied by one J. A. Morris, who was an agent of said defendant company, returned to petitioner's house, and again began their assault upon the said C. W. Blalock and W. B. Blalock, and remained at the house, and continued to urge them, through the day and until the afternoon. All of the statements above referred to as having been made by the said Dr. Hawes were repeated and insisted upon with great energy by both of said agents, and each of them represented that said defendant company was in possession of evidence that vitiated said policy, and that it would contest the same, and show that the policy was obtained by false representations. Each, in turn, made persistent arguments to both insured and beneficiary, claiming that the said defendant company was not liable on said policy, for the reasons above stated, and, in addition thereto, represented to said insured that the beneficiary of said policy, in case of the death of the insured, would have to bring suit thereon in the state of Florida; that the said defendant company could establish fraud by witnesses; that the said defendant company, having ample means, would carry the case from court to court, ending only with the United States supreme court; and that he (the insured), being dead, would not be present to meet the evidence of fraud submitted by said defendant company, and that, necessarily, there could be no recovery, but the beneficiary could be put to great expense and trouble, and get nothing in the end.

(11) Petitioner shows that after long and tedious argument, in which the said C. W. Blalock and W. B. Blalock, in their enfeebled condition (this last-

v.73f.no.4—42

mentioned interview occurring only two or three days before the death of C. W. Blalock, and but a short time prior to the death of W. B. Blalock), were overreached; and, while not positively denying any fraud on their part, yet, being unduly excited, and desiring to avoid litigation over the estate in case of death, and fearing, from the statements of said agents, that false testimony would be produced against the assured which would reflect upon his honor and integrity after death, they then and there accepted from said agents the sum of twenty-five hundred ($2,500.00) dollars, and signed an agreement to surrender the said policy.

(12) Petitioner shows that two days thereafter, to wit, on the 30th day of January, 1894, the said C. W. Blalock died, and soon thereafter, to wit, on March 5, 1894, W. B. Blalock died.

(13) Petitioner shows that in pursuance of said payment, and by means of false and fraudulent representations, the said defendant company obtained possession of said policy, a substantial copy of which is here attached; but petitioner avers that said original policy, as well as the proofs of death submitted by petitioner, are now in the possession, custody, and control of said defendant company, and it is hereby notified to produce the same upon the trial of this case, to be used as evidence by the plaintiff.

(14) Petitioner avers that the said cancellation was obtained by fraud; that the representations made by the agents of said defendant company as inducement to the said cancellation were absolutely false, and were made for the purpose of getting an unconscionable advantage of the said C. W. Blalock and W. B. Blalock in their last dying struggles.

(15) Petitioner shows that the refusal of said defendant company was in bad faith, by reason of which it has, by said unwarranted refusal to pay the balance due on said policy on petitioner's demand, become liable to petitioner, in addition to the amount claimed as balance due on said policy, to a penalty of twenty-five per cent. upon the amount so due, as aforesaid; also to pay reasonable attorney's fees, to wit, the sum of five hundred dollars, for which amount petitioner expressly sues.

(16) Petitioner shows that on account of the fraudulent action of said defendant company in procuring the cancellation and possession of the said policy, petitioner has been damaged in the sum of twenty-five hundred ($2,500.00) dollars, besides interest, to which amount is to be added the twenty-five per cent. penalty, and reasonable attorney's fees.

(17) And petitioner prays as follows: That he shall have judgment for said sum of twenty-five hundred ($2,500.00) dollars, and attorney's fees and damages; that said policy shall be brought into court, and delivered up, and the agreement thereon, canceling it, shall be canceled, and that judgment be rendered for the balance due thereon, after crediting the twenty-five hundred ($2,500.00) dollars paid. Petitioner here offers to account for said twenty-five hundred ($2,500.00) dollars by entering such credit. And petitioner prays process may issue, requiring the said defendant company to be and appear at the next term of the said court, to answer petitioner's complaint.                Jno. L. Hopkins & Sons.

                                             Chas. Z. Blalock,
                                        Attorneys for Petitioner.

To this petition a demurrer was filed in the city court, and it was pending when the case was removed to this court. The demurrer is as follows:

And now comes the defendant, and demurs to the petition filed in the foregoing case upon the following grounds:

(1) That the said petition, under the allegations therein contained, discloses no cause of action against said defendant.

(2) That the said petition shows that the said cause of action was compromised and settled at and for the sum of twenty-five hundred dollars, and the said policy sued on surrendered; and said plaintiff does not aver that prior to the bringing of said action it tendered the said sum of twenty-five hundred dollars back to the said defendant, and offered to cancel said settlement, and that said defendant refused to do the same; and this de-

murrant says that said plaintiff cannot maintain said action without first tendering back and offering to cancel said agreement of compromise set forth in said petition.

(3) Because the said plaintiff in said action seeks to invoke the jurisdiction in equity to account for said twenty-five hundred dollars, and to cancel said agreement of compromise, which same is essentially necessary in any action upon said policies. That this court is a court of common-law jurisdiction alone, and cannot maintain jurisdiction of said matter of equitable cognizance.

Without waiving said demurrer defendant answers said petition as follows:

(1) It denies so much of paragraph 1 as stated that said defendant is indebted to petitioner in the sum of twenty-five hundred dollars, or any other sum. It denies that the same is a balance due upon a policy of insurance issued by defendant company, or that the copy attached is a copy of any such policy. It admits the preceding allegations of said paragraph 1.

(2) It admits that on the 22d day of July it issued a policy, as stated in paragraph 2, to said petitioner; but denies that the policy attached to said petition is a copy thereof.

(3) Defendant is without sufficient information to admit or deny the allegations of paragraph 3.

(4) It denies the allegations in paragraph 4.

(5) It denies the allegations in paragraph 5.

(6) It denies the allegations in paragraph 6.

(7) It denies the allegations in paragraph 7.

(8) It denies the allegations in paragraph 8.

(9) It denies the allegations in paragraph 9.

(10) It denies the allegations in paragraph 10.

(11) It denies the allegations in paragraph 11, except the allegation that said party then and there accepted the sum of twenty-five hundred dollars in full settlement of said policy, and signed an agreement surrendering said policy; and avers that the policy was duly, lawfully, and fairly surrendered.

(12) Defendant is without sufficient information to either admit or deny the allegations of paragraph 12.

(13) The defendant denies all of the allegations in paragraph 13 except the statement that the policy of insurance alluded to was surrendered into the possession of defendant.

(14) It denies the allegations of paragraph 14, and says that the same are absolutely false.

(15) It denies the allegations of paragraph 15

(16) It denies the allegations of paragraph 16.

(17) It saith that petitioner is not entitled to the judgment claimed in paragraph 17, or any part thereof, and prays judgment in favor of the defendant. Of all of these facts defendant puts itself upon the country.

King & Spalding,<br>Defendant's Attorneys.

The demurrer has been argued here. The city court has no equity jurisdiction, and while there is no distinction, now, under the practice in the state courts, between law and equity, still, where equitable relief is sought, it seems that the city court is entirely without jurisdiction to entertain the case or to grant relief. In suits for equitable relief, the superior courts of the state still have exclusive jurisdiction. The petition filed by the plaintiff in the city court, and brought here, prays, among other things, that the policy of insurance which is the subject-matter of contention be brought into court, and delivered up, and that the agreement thereon canceling it shall be canceled. So far as the petition seeks this relief, it is not seriously contended by counsel for the plaintiff that it could be

entertained in the city court, or on the common-law side of the court here, to which it was removed. It is contended, however, that there is enough in the petition to make it a suit for damages by the administrator against the insurance company for the deceit which he claims was practiced on his intestates. While it is true that there is some language in the petition which is sufficient to base argument upon in favor of this contention, it is not believed that, considering the whole of the petition together, it can be entertained as constituting a good petition or declaration in a case for damages for deceit, etc. The language which is relied on by counsel is only such language as would be used in a suit to set aside a contract of cancellation, and to recover the balance due on the policy; and where the evident theory and purpose of the petition is for equitable relief, it would not do to take fragments of the petition, and make out of them a suit of a totally different character from that which seems to have been in the mind of the pleader, and which alone the defendant would have the right to believe he was called on to answer. Entertaining this view of the pleadings, it is unnecessary to consider the forcible argument of counsel for defendant that, upon the substantial merits of the action, no cause for recovery, as the case stands, is shown, on the ground that the tender back by the administrator to the insurance company of the amount paid by it would be necessary to give the administrator a standing in court.

Suggestion has been made of a desire to amend the petition in the event the court should consider it insufficient as it stands. Counsel will be heard as to this. Unless proper amendment can be made and allowed, the demurrer must be sustained, and the case dismissed.

After the foregoing decision had been filed, the plaintiff amended his petition by striking out certain language, leaving it, as he claimed, simply an action for damages for deceit in obtaining the cancellation of the contract of insurance. Upon this application to amend the matter was again brought before the court, and the following decision was had:

(February 7, 1896.)

The necessary logical as well as legal result of the decision of the court in this case of November 6, 1895, on the demurrer, is the rejection of the present application to amend. The proposition and the effort here now is to amend the pleadings so that the case shall be changed from what the court determined was an equitable proceeding to cancel the contract of cancellation of the policy, and the recovery of the balance due thereon, into an action for damages for deceit. The pleadings, as then construed by the court, made this a suit on the policy, treating the contract of cancellation as fraudulent, and such that it should be set aside for that reason, and judgment rendered for the balance of the face of the policy. It would be, if amended as proposed, an action for damages for deceit by false representations made, by which the cancellation of the policy was obtained. Not only would it be changing an action sounding

in contract to one of tort, but it would change a suit in equity to an action at law. In this view of the matter, that the offer to amend must be denied can hardly be questioned.

In view of the confidence expressed by the eminent counsel for the plaintiff in the correctness of his pleadings originally, I have re-examined the matter with considerable care, and this re-examination has not shaken my belief in the correctness of the decision made after the argument of the demurrer in November last. The offer to amend must be denied, and the demurrer sustained.