# CASES

## ARGUED AND DETERMINED

### IN THE

# UNITED STATES CIRCUIT COURTS OF APPEALS AND THE CIRCUIT AND DISTRICT COURTS.

---

SCHURMEIER et al. v. CONNECTICUT MUT. LIFE INS. CO.

(Circuit Court of Appeals, Eighth Circuit. April 26, 1909.)

No. 2,753.

**1.** COURTS (§ 359*)—JURISDICTION OF FEDERAL COURTS—ACTION TO ESTABLISH CLAIM AGAINST ESTATE.

A foreign creditor may establish his claim in the courts of the United States against the personal representatives of a decedent, though the laws of the state in terms limit such right to proceedings in the local probate courts, but in such case the federal court administers the state laws and is bound by the same rules that govern the local tribunals.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 939–949; Dec. Dig. § 359.*

Probate jurisdiction of federal courts, see note to Bedford Quarries Co. v. Thomlinson, 36 C. C. A. 276.]

**2.** EXECUTORS AND ADMINISTRATORS (§ 225*)—PROVING CLAIMS AGAINST ESTATE—LIMITATION.

Gen. St. Minn. 1894, § 4509, provides that the probate court shall by order fix the time within which claims may be presented against the estate of a decedent, which shall not be less than six months nor more than one year, and that no claim shall be received after the expiration of such time "unless for good cause shown the court may in its discretion receive, hear and allow such claim, * * * but no claim shall be received or allowed unless presented within one year and six months from the time when notice of the order was given." *Held*, that such limitation relates to the time the claim is presented, and not to the time of trial and judgment, nor to the time the court judicially determines whether good cause for extension exists, and that the commencement of an action on a claim in a federal court by a foreign creditor is a presentation of the claim within the statute.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 789; Dec. Dig. § 225.*]

**8.** EXECUTORS AND ADMINISTRATORS (§ 225*)—CLAIMS AGAINST ESTATE—JURISDICTION TO ALLOW—LIMITATION.

A foreign creditor proceeding under such statute brought an action at law on a claim against the estate of a decedent in a federal court after the time fixed for filing claims by the probate court had expired, but with-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

171 F.—1

in 18 months from the time the order was made. It did not allege any reason for the failure to sooner present the claim, and a judgment in its favor was reversed by the appellate court on the grounds that the claim could be allowed only on a finding that there was good cause for the delay and that jurisdiction to make such finding was in equity only. After the cause was remanded, the 18 months having then expired, by leave of court it was transferred to the equity side, and the complaint was recast into a bill in equity alleging grounds for the delay. *Held*, that by the filing of the original complaint the court acquired general jurisdiction of the cause and to allow the transfer and amendment of the pleadings, which, as they did not change the cause of action, did not constitute the bringing of a new suit, but related back to the time of the commencement of the action, and that the power of the court to consider and allow the claim was not barred by limitation.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 789; Dec. Dig. § 225.*]

4. EXECUTORS AND ADMINISTRATORS (§ 225*)—PROVING CLAIMS AGAINST ESTATE—LIMITATION.

Complainant held notes of a decedent, secured by a mortgage, which did not mature until after the time fixed by the probate court for filing claims against the estate had expired. The mortgage was then foreclosed, and the property, which the decedent had transferred, was sold, leaving a deficiency, to recover which action was brought in a federal court against the executors. Under Gen. St. Minn. 1894, § 4509, the court had power to allow the claim if presented within 18 months after the order for filing claims was made "for good cause shown." *Held*, that under the liberal construction of such provision by the Supreme Court of the state, and in view of the facts that the estate was not closed and that there was no defense on the merits, the facts shown were sufficient to authorize its consideration and allowance.

[Ed. Note.—For other cases, see Executors and Administrators. Cent Dig. § 789; Dec. Dig. § 225.*]

Sanborn, Circuit Judge, dissenting.

Appeal from the Circuit Court of the United States for the District of Minnesota.

See, also, 124 Fed. 865, 60 C. C. A. 51; 137 Fed. 42, 69 C. C. A. 22.

Harris Richardson (Harold C. Kerr, on the brief), for appellants.

George W. Markham (James E. Markham, on the brief), for appellee.

Before SANBORN and HOOK, Circuit Judges, and PHILIPS, District Judge.

HOOK, Circuit Judge. The principal question in this case is whether the claim of the insurance company upon which it obtained a decree in the Circuit Court is barred by the limitations in the Minnesota statute (Gen. St. 1894, §§ 4509 and 4511) relating to the presentation and allowance of claims against estates of deceased persons. The statute provides that in granting letters testamentary or of administration the probate court shall make an order limiting the time for presentation of claims of creditors to not less than six months nor more than one year from the date of the order, that no claims shall be received after the time limited, except that "for good cause shown the court may in its discretion" grant additional time not extending beyond eighteen months from the time notice of the original order is

given, and that all claims arising upon contract not presented within the time prescribed shall be forever barred.

When letters testamentary were issued to Schurmeier's executors the probate court of Ramsey county, Minn., having cognizance of the matter, fixed six months as the period for presentation of claims, and notice of the order was duly given. The insurance company did not present its claim or sue thereon within the period so fixed, but later and within the additional year allowable for good cause brought an action at law in the circuit court. A judgment of that court in favor of the insurance company was reversed because no excuse for the delay appeared in the record. 124 Fed. 865, 60 C. C. A. 51. An amended complaint was then filed and another judgment obtained in the Circuit Court, which was also reversed. 137 Fed. 42, 69 C. C. A. 22. It was held upon the authority of Security Trust Co. v. Bank, 187 U. S. 211, 23 Sup. Ct. 52, 47 L. Ed. 117, that, as no action was begun within the period first fixed by the probate court, the remedy thereafter was in equity, not at law. When the cause was remanded upon the second reversal the insurance company applied to the Circuit Court to transfer it to the equity side, the application was granted, and the complaint at law was reformed into a bill in equity. A final hearing in equity resulted in a decree for the insurance company, from which the executors took the appeal now before us.

As already observed, when the action at law was begun in the Circuit Court, the additional year allowable for good cause had not expired. The complaint of the insurance company contained no averments excusing its delay beyond the six months fixed by the order of the probate court. In the answer of the executors the Minnesota statute and the order were relied on, and it was averred that no cause for an extension of time existed. The company demurred to the answer, the demurrer was sustained, and, the executors declining to replead, judgment was rendered against them. It will thus be seen that the first judgment of the Circuit Court, reversed by this court, proceeded upon the assumption that the action could be brought and maintained after the six months had expired and without any ground or cause for an extension of the time. In the opinion of this court (124 Fed. 865, 60 C. C. A. 51) Security Trust Co. v. Bank, 187 U. S. 211, 23 Sup. Ct. 52, 47 L. Ed. 147, is cited as controlling authority upon this question, but the other rule announced in that case, that after the first period fixed by the probate court had expired the remedy was in equity, was not definitely pointed out. On the contrary, this court said:

"As the record now stands, upon the authority of that case the judgment of the court below must be reversed and the demurrer overruled, but with leave to the plaintiff to reply to the answer or to amend its complaint, stating its cause of action at law or in equity, as it may be advised, and with leave to the defendants to answer or otherwise plead to such amended complaint."

Thus three courses were suggested as being open to the insurance company: (1) A reply to the answer in the pending law action in which the executors averred that no cause for an extension existed, (2) an amendment of the complaint at law, or (3) a recasting of the complaint with appropriate amendments into a bill in equity. Acting

upon this, an amended complaint at law was filed; and it is but fair
to say that counsel, failing to examine the opinion of the Supreme
Court in Security Trust Co. v. Bank, supra, may have been misled by
the direction above quoted. It is plainly disclosed in that opinion that
the remedy was in equity. On the other hand, it is doubtful that prej-
udice could result, because when the judgment was reversed the
eighteen months prescribed by the statute had already passed, and, if
the delay in showing cause for an extension beyond the six months
was fatal, it was fatal then, and the adoption of a wrong course after-
wards added nothing to it.

The amended complaint at law, the second judgment in favor of
the insurance company, the second reversal by this court, the transfer
of the cause from the law to the equity side of the Circuit Court, the
reformation of the pleadings, the final hearing, and the decree from
which this appeal was taken, all occurred more than eighteen months
after publication of the notice of the order for the presentation of
claims. The reliance of the insurance company is upon the connec-
tion of these successive steps for the establishment of its demand with
the action originally begun within the eighteen months, and upon the
existence of sufficient cause for the delay beyond the first six months
of that period. In approaching the situation so presented, it is im-
portant to notice some settled principles of law and some facts clearly
shown in the case in hand. A foreign creditor may establish his
claim in the courts of the United States against the personal repre-
sentatives of a decedent though the laws of the state in terms limit
such right to proceedings in the local probate courts. In such case,
however, the courts of the United States administer the state laws
and are bound by the same rules that govern the local tribunals. Se-
curity Trust Co. v. Bank, supra. In the case before us the requisite
grounds of federal jurisdiction, diversity of citizenship, and amount
in controversy are present, and, passing for the moment the matter
of legal or equitable cognizance, the insurance company, therefore, had
a lawful right to proceed in the Circuit Court. Under the Minnesota
statute the probate court in which the administration of the estate
was pending, having fixed six months for the presentation of claims,
was authorized thereafter to grant an additional year for good cause
shown. The Circuit Court of the United States sitting in equity
was possessed of like authority. Schurmeier's Executors v. Insur-
ance Co., 137 Fed. 42, 69 C. C. A. 22. The limitations of the Minne-
sota statute involved in this case relate to the time the claim is pre-
sented for allowance, not to the time of trial and judgment, nor to
the time the court judicially determines whether good cause for an
extension existed. In other words, if a claim is "presented" within
the six months or eighteen months, as the case may be, the proceed-
ing takes its orderly judicial course, and it is not important that the
questions connected with its allowance remain undetermined until aft-
er the time has expired. The bringing of an action upon a claim in
a Circuit Court of the United States having jurisdiction has the same
effect as a proceeding in the probate court, and is a "presentation"
of the claim to all intents and purposes as if it had been presented to
the probate court. The estate of the deceased has not been closed.

When the action was brought in the Circuit Court the estate was in active course of administration; claims against it were allowed by the probate court months afterwards. In this particular the case differs from that of Security Trust Co. v. Bank, supra. The claim of the insurance company is a just one. When the action was begun there was no substantial defense to it save in the failure to present it within the six months fixed by the probate court, and the question whether there was good cause for the delay.

The determination of the principal question stated at the outset, therefore, depends upon the existence of sufficient cause within the meaning of the statute for an extension of time for the presentation of the claim, the effect of the failure to set forth such cause in the pleadings within the eighteen months, and the effect of first proceeding at law and the subsequent transfer of the cause to the equity side of the court. The Minnesota statute, and a similar one of Wisconsin from which the former was doubtless taken, have been construed by the courts of those states very liberally in favor of creditors whose claims were just and whose delay had not worked hardship to others. In State ex rel. v. Probate Court, 67 Minn. 51, 54, 69 N. W. 609, 610, it was said:

"The sole object for limiting the time for the presentation of claims is to secure the prompt settlement of estates. In the present case there is not even a suggestion that the granting of relator's application would in any way delay or prejudicially interfere with the settlement of the estate, or cause it any possible injury, except to subject it to the chance of having to pay a just claim. Under the circumstances, to refuse relator the privilege of presenting its claim would be unreasonably harsh."

And in State ex rel. v. Probate Court, 79 Minn. 257, 258, 82 N. W. 580, the court said:

"Courts are very liberal in relieving parties from defaults of this kind, especially when no injury can result to innocent parties. They are not only relieved from their own excusable negligence, but from like negligence of their attorneys as well. In this case it does not appear that the administration of the estate will be in any way hindered or delayed, and it does not appear that any other person interested in the estate will or can be in any manner prejudiced, by granting the application."

Smith v. Grady, 68 Wis. 215, 31 N. W. 477, has points of resemblance to the case at bar. There a creditor sought the allowance of a foreign judgment, but the county court, sitting in probate, denied it upon the ground that the judgment was void on its face, and the decision was successively affirmed by the circuit court and the Supreme Court of the state. While the appeal of the creditor was pending in the circuit court, and after the period fixed for the presentation of claims had expired, he asked the county court to extend the time so he might present the demand upon which the void judgment had been rendered. The application was denied. The Supreme Court of Wisconsin, reversing the decisions of the lower courts, held that the creditor had proceeded with diligence, was not guilty of laches in mistaking his remedy, and was entitled to relief. In the case in 79 Minn. 257, 82 N. W. 580, the court cited as an authority sustaining its conclusion Baxter v. Chute, 50 Minn. 165, 52 N. W. 379, 36 Am. St. Rep. 633, in which a statutory provision authorizing the opening up of a default

in an action because of mistake or excusable neglect was held to embrace a mistake of law on the part of counsel. In view of the decisions of the state courts, we think the delay of the insurance company was excusable and that it had good cause for an extension of time. The mortgage debt held by the insurance company did not become due until after the six months fixed for the presentation of claims had expired. The deceased debtor had sold the mortgaged property shortly before his death, and it was to the interest of his estate that the property be followed, a foreclosure be had, and the proceeds applied before resorting to funds in the hands of the executors. Indeed, the statute (Gen. St. Minn. 1894, § 4529) prohibited payment of a secured claim "until the creditor shall first have exhausted his security, or shall have released or surrendered the same"; and, though the claim might have been previously presented and allowed for the full amount, the closing of the estate would have been delayed, and the mortgagee possibly debarred from exercising a power of sale contained in the mortgage. Gen. St. Minn. 1894, § 6029. Again, the course of the insurance company was in conformity with what was supposed to be the settled doctrine of the courts of the United States having jurisdiction in Minnesota. The Circuit Court had previously held broadly that a creditor whose citizenship and claim were such as to entitle him to invoke its jurisdiction might as of right bring his action at law therein at any time during the eighteen months mentioned in the statute; and this court affirmed that ruling. Security Trust Co. v. Dent, 104 Fed. 380, 43 C. C. A. 594; Security Trust Co. v. Bank, 104 Fed. 1007, 43 C. C. A. 683. The action of the insurance company was brought before that limitation had run, but after it had run the Supreme Court held that the view of this court and the Circuit Court could not be sustained, and that after the expiration of the time first fixed by the probate court further indulgence depended upon the existence of good cause. 187 U. S. 211, 23 Sup. Ct. 52, 47 L. Ed. 147. We think that the condition of the administration of the estate, that it was still open and claims were being audited and allowed, that the claim of the insurance company was not due, that it was secured by a lien upon property then owned by a third party, the enforcement of which with application of the proceeds was prerequisite to payment from the estate of any deficiency, that the claim finally asserted was a just one subject to no substantial defense, that the misconception of the correct procedure was due to the decisions referred to, all considered, very naturally produced the delay, and constituted sufficient cause for an extension of time. In this particular we think the case is well within the letter and spirit of the statute as construed and applied by the state court.

Good cause for an extension of time existing, the failure to aver it in the pleadings until after the eighteen months had expired was not fatal. This is a necessary deduction from the opinion of this court on the first writ of error, for when the opinion was delivered the time had run, and yet methods of asserting the grounds for an extension were suggested. The claim of the insurance company was founded upon its contract, not upon the statutory limitation of the time for its presentation in a judicial proceeding, nor upon the reasons for an enlarge-

ment of such time. The limitation of the statute is defensive in character; it is not one of the elements and constitutes no part of the claim itself. Nor is it self-assertive; on the contrary, it must be affirmatively invoked by him who seeks its aid. In this particular it is like the ordinary statutory limitation, which may be waived. A pleading showing the lapse of time and silent as to cause for extending or enlarging it may be demurrable, but if not challenged it will support a valid judgment. An amendment to such a pleading forestalling a defense by showing grounds satisfying or avoiding the statute does not set forth a new cause of action; therefore it relates back to the time the action was begun. A pleading may be amended after the period of limitation has run by the averment of facts taking the case out of the statute. See Johnson v. Waters, 111 U. S. 640, 672, 4 Sup. Ct. 619, 28 L. Ed. 547.

There remains for consideration the transfer of the cause from the law to the equity side of the court and the recasting of the pleadings after the eighteen months had run. The court already had jurisdiction of the subject-matter of the controversy and of the parties. By this we mean jurisdiction in its general sense, and have in mind the fundamental grounds prescribed by Congress, the absence of which cannot be waived or cured by consent or stipulation of the parties. If such grounds exist when an action is begun, though they are not shown in the record, a Circuit Court nevertheless lawfully acquires cognizance of the cause, and may allow an amendment supplying the necessary averments. This may be done after a judgment has been reversed by an appellate court because of the apparent lack of jurisdiction, and after the period prescribed by a statute of limitations has fully run and the action if commenced anew could not be maintained. Carnegie, Phipps & Co. v. Hulbert, 70 Fed. 209, 16 C. C. A. 498; Bowden v. Burnham, 59 Fed. 752, 8 C. C. A. 248. Such amendments do not introduce a new cause of action, and, as they simply bring upon the record facts existing when the action was begun, they relate back to that time. A Circuit Court of the United States exercises jurisdiction both at law and in equity, and, while the distinction is important and is carefully preserved, we do not think that if a party misconceives his remedy the court is powerless in aid of justice to direct a transfer of the cause to the proper docket, and thereafter, with appropriate changes as to form, to allow it to proceed as though originally lodged there. An order to that effect is no more radical than one permitting an amendment showing for the first time fundamental statutory grounds for invoking the jurisdiction of the court for any purpose; and, as we have seen, the practice of granting orders of the latter character has been approved. It not infrequently happens that an action involving both legal and equitable rights and remedies is removed to a Circuit Court of the United States from a court of a state in which the statutes provide simply for a civil action without distinction between law and equity, and that difficult questions arise in the Circuit Court as to the proper docketing and disposition of the case. It would be a harsh rule that an error of judgment in such matter rendered proceedings on the wrong side of the court wholly void, and that the statutes of limitation continued to run as though no action were pending. In

this respect there is no difference between a cause removed to a Circuit Court and one originally begun there. If the requisite diversity of citizenship exists or a federal question is involved, and the prescribed amount or value is in controversy, the cause is pending in the Circuit Court, and an error committed by entertaining it on the wrong docket is an error in the exercise of jurisdiction which the court has power to correct. Broad powers of amendment of process, pleadings, orders, and judgments are conferred by act of Congress, and should be liberally exercised in the interest of justice. We commonly speak of a court of law and a court of equity as though they were separate and distinct tribunals, but a Circuit Court with its dual jurisdiction is but a single court, and its material constitution is the same when it sits to-day in the trial of an action at law and to-morrow in hearing a suit in equity. There are not two courts created by different laws with judges holding under different commissions. In United States Bank v. Lyon County (C. C.) 48 Fed. 632, 633, it was said:

"Therefore the transfer of a cause from the equity to the law docket of the same Circuit Court is not transferring the case from the jurisdiction of one court to that of another and distinct tribunal, but, in effect, is merely directing that it be placed upon the proper docket, so as to be proceeded with according to the rules governing the practice in that branch of the court."

And after referring to a provision of the state Constitution perpetuating the distinction between law and equity jurisdiction, and to a provision of the state statute that an error made in the form of action should not work an abatement, but the cause should be transferred to the proper docket, the court further observed:

"Why may not this court follow this statutory enactment as a proper rule of action, when it finds that a case, proper for an action at law, has been commenced in form of a suit in equity? If the cause of action is one cognizable in a Circuit Court of the United States, and is brought in that court, but an error is committed in bringing it in equitable instead of legal form, why is it not within the power of the court to order that in this particular the form of the action may be amended, and the cause be entered upon the proper docket? Why put the parties to the delay and expense necessarily caused by a dismissal and recommencement of the proceeding, when the same can be saved by following the rule enacted in the state statute, and adopting the same as the proper practice in the federal court? In sustaining the demurrer to the bill, the ruling was not that the Circuit Court did not have jurisdiction, but that the case was not a proper one for equitable cognizance, because an adequate remedy could be had at law. It was not held that the complainant did not have a cause of action, but only that the form of the proceeding was erroneous, in that it should have been at law, and not in equity."

In the case at bar the original cause of action of the insurance company was purely a legal one. Resort to equity became necessary only to escape the subsequent bar of a limitation which might or might not be urged. If it had not been urged, a judgment at law would have been valid and entitled to recognition when presented to the probate court for a place in the schedule of liabilities. We think the Circuit Court acted within its power in permitting the transfer.

The decree is affirmed.

SANBORN, Circuit Judge (dissenting). In my opinion the conclusion in this case conflicts with the decisions of the Supreme Court in

Security Trust Company v. Black River National Bank, 187 U. S. 211, 229, 237, 23 Sup. Ct. 52, 47 L. Ed. 147, and Union Pacific Ry. Co. v. Wyler, 158 U. S. 290, 296, 15 Sup. Ct. 877, 39 L. Ed. 983, and with the decisions of this court in Schurmeier v. Connecticut Mutual Life Ins. Co., 137 Fed. 42, 47, 69 C. C. A. 22, 27, and Whalen v. Gordon, 95 Fed. 305, 309, 37 C. C. A. 70, 74, and the insurance company was not entitled to any relief in this suit: First, because after July 18, 1902 the date of the expiration of the eighteen months, it had no right to commence or maintain a suit upon the cause of action upon which it has secured relief, the cause of action for a decree that the court should for good cause receive and hear its claim after the expiration of the six months fixed by the order of the probate court, and no suit was instituted upon this cause of action until August 5, 1905, when the bill in equity was filed under the order of the court below of July 10, 1905, that the defeated action at law should thenceforth be a suit in equity; second, because the amendment of August, 1905, whereby for the first time there was introduced into this action the cause of action in equity upon which the recovery herein is based, did not relate back to the time of the filing of the original complaint at law, and the new cause of action had expired and was barred on July 18, 1903, more than three years before it was introduced into the case; third, because the transformation of the action at law which had expired into a maintainable suit in equity by the order of the court below against the objection of the successful party in the action at law was erroneous and ultra vires; and, fourth, because the insurance company was guilty of culpable laches.

1. When a man dies, his property vests in the state in trust for his creditors, heirs, and devisees, on the conditions and subject to the limitations prescribed by its statutes of limitation, descent, and distribution, which occupy the place of a deed of trust between private parties. His moral obligation to pay his debts and every personal attribute of the claims of his creditors die with his person, and in place of all these the law substitutes equitable estates, claims, not in personam, but in rem, to shares in the property he owned. It is upon the fact that the administration of the estate of a dead man is only the enforcement of a trust that the jurisdiction of a federal court to enforce the rights of creditors, heirs, and legatees to shares therein is based. It is derived from the jurisdiction of the court of chancery of England to administer trusts. 1 Story's Equity Jurisprudence, § 532; Attorney General v. Cornthwaite, 2 Cox, Ch. 44; Hagan v. Walker, 14 How. 28, 14 L. Ed. 312; Adams, Equity, 257. "In the court of chancery executors and administrators are considered as trustees, and that court exercises original jurisdiction over them in favor of creditors, legatees, and heirs, in reference to the proper execution of their trust." Green's Adm'x v. Creighton, 23 How. 90, 93, 16 L. Ed. 419; Borer v. Chapman, 119 U. S. 587, 598, 599, 7 Sup. Ct. 342, 30 L. Ed. 532; Continental National Bank v. Heilman (C. C.) 81 Fed. 36, 43.

A proceeding to administer upon the estate of a deceased person is a proceeding, not in personam but in rem, to administer a trust. The property is the defendant, the executors and administrators are trus-

tees, and all who are entitled to any share of the estate are cestuis que trust. Grignon's Lessee v. Astor, 2 How. 319, 327, 11 L. Ed. 283; Sheldon's Lessee v. Newton, 3 Ohio St. 494, 503.

The creditors of the deceased become cestuis que trust, their claims are equitable estates in the trust property, and the statutes of administration which dictate the time and manner of the presentation and allowance of their claims prescribe conditions precedent to the existence and enforcement of these equitable estates in the property of which the deceased died seised, which is held in trust for them. While such statutes are commonly called statutes of limitation, and while they do limit the time within which claims may be presented, they are in reality rules of property, and hence they may not, like ordinary statutes of limitation, be lawfully waived, ignored, or disregarded by courts, administrators, executors, heirs, or claimants, because they are conditions of the trust and to waive or to disregard them is to violate the trust. Security Trust Company v. Black River National Bank, 187 U. S. 211, 229, 23 Sup. Ct. 52, 47 L. Ed. 147; Pulliam v. Pulliam (C. C.) 10 Fed. 53, 61, 69, 71, 73, 75, 76. In the Trust Company's Case the Supreme Court adopted the opinion of Judge Hammond upon this subject, and said:

"In Pulliam v. Pulliam (C. C.) 10 Fed. 53, 78, the distinction between ordinary statutes of limitation and statutes of administration of the estates of decedents limiting the time within which creditors must prove their claims is pointed out in the respect that the latter are rules of property as well as statutes of limitation."

Let us turn to the opinion in Pulliam v. Pulliam in order to see clearly how that distinction was declared. Joel L. Pulliam held a just claim against the estate of John N. Pulliam, deceased, which he had failed to present for allowance within the time prescribed for its presentation by the administration statutes of Tennessee. After that time expired he collected upon a claim of the estate against a third party $9,246.02, the executor of the estate undertook to waive the statute, accounted for this money by permitting Joel to apply it upon his claim against the estate, took vouchers from him for that payment, and thus accounted for the money "in good faith under a mistaken view of the law." Page 61. The court held that both the executor and Joel were liable to pay back this money, because its payment upon the barred claim was a breach of trust. Page 73. The reasons why neither the executor, the administrator, nor the court may lawfully waive or disregard such statutes are clearly and convincingly stated by Judge Hammond, and his opinion is lucid and instructive. Discussing the claim that though the statute had run, the moral obligation to pay the just debt might, as in the case of ordinary statutes of limitation, sustain a new promise, a payment, or a waiver, he said:

"There is undoubtedly a principle (and it was that misled me at the former hearing) that a debt barred by the statute of limitations, or discharged in bankruptcy, will, nevertheless, support a payment, or a new promise to pay, after the bar has attached or the discharge has taken effect. But this must be confined to the ordinary statute of limitations, and cannot be said of the statutes in favor of dead men's estates. As to a new promise to pay, the executor or administrator cannot make a valid one after the bar of these statutes has attached, and it is settled that he cannot waive this statute, while

he may the ordinary statute of limitations. Batson v. Murrell, 10 Humph. (Tenn.) 301, 302, 51 Am. Dec. 707; Brown v. Porter, 7 Humph. (Tenn.) 373, 383, 384; Byrn v. Fleming, 3 Head (Tenn.) 658, 662, 663; Wharton v. Marberry, 3 Sneed (Tenn.) 603, 607, 608; Wooldridge v. Page, 9 Baxt. (Tenn.) 325, 332, 333; Woodfin v. Anderson, 2 Tenn. Ch. 331. * * * A discharge in bankruptcy effecutally extinguishes a debt, and yet it will support a new promise, or an actual payment, because while a man lives there is a moral obligation on him to pay his debts, whether the legal obligation be extinguished or only barred, and in that sense the debt is never extinguished. But non constat that this is so when a man is dead; that moral obligation perishes with him, and survives neither to his executor nor his heir as a matter of law, though he may, by will, confer it upon them. Anciently his property went to the first taker, or was absorbed by the church for pious uses; but the lawmaking power interfered, and by statute imposed on his property a trust for the benefit of his creditors. In this view the proceedings to recover the debt are in a large sense proceedings in rem against the property. It has never been denied that the Legislature may attach such conditions as it chooses to this trust. These statutes attach a condition precedent that a creditor must proceed within two or three years, as the case may be, to enforce his claim. If he does not, the heir or legatee takes the property absolutely discharged of all further trust for the benefit of the creditors, and may follow it into whosesoever hands it goes."

In view of these principles of the law, it was in my opinion indispensable to the statement of a good cause of action in this case that the creditor should plead a compliance with the condition precedent prescribed by the Minnesota statute, and, if it failed to do so and that condition had not been fulfilled, neither the executors nor the courts could, on account of the failure of the former to plead a noncompliance or on account of their silence, waive the condition as living debtors might have waived the bar of ordinary statutes of limitation.

The statute of Minnesota provided:

"At the time of granting letters testamentary, or of administration, the court shall make an order limiting the time within which creditors may present claims against the deceased for examination and allowance. * * * No claim or demand shall be received after the expiration of the time so limited unless for good cause shown the court may in its discretion receive, hear and allow such claim upon notice to the executor or administrator, but no claim shall be received or allowed unless presented within one year and six months from the time when notice of the order is given." Gen. St. Minn. 1894, § 4509.

Any claim not thus presented is forever barred. Section 4511. This statute prescribed two conditions precedent by compliance with which a creditor might secure an equitable estate in the property of the deceased. First, he might do so by presenting his claim to the probate court or by commencing an action at law in the federal court within the time limited by the order, in this case prior to June 27, 1901; second, he might do so by an application to the probate court or by the commencement of a suit in equity in the federal court wherein he pleaded good cause why the court should receive his claim within eighteen months after the notice of the order, in this case prior to July 18, 1902. The second condition could be complied with only by presenting to the probate court within the eighteen months a petition which stated good cause and prayed that the court would receive the claim, or by exhibiting in the federal court before July 18, 1902, a bill in equity wherein such good cause was set forth, and an appeal was made to the chancellor to receive the claim. "An application to the

federal court to decree an extension of time beyond the period previously prescribed by the probate court would have to be made by a bill in equity showing good cause." Security Trust Company v. Black River National Bank, 187 U. S. 237, 23 Sup. Ct. 52, 47 L. Ed. 147.

This statute was derived from the state of Wisconsin, and, when the time fixed by it expired without such an application, not only was the claim of the creditor barred, but the right of action thereon was extinguished, and the property vested absolutely in the other creditors, or heirs, or devisees. Austin v. Saveland's Estate, 77 Wis. 108, 45 N. W. 955, 656; Carpenter v. Murphey, 57 Wis. 541, 15 N. W. 798; Winter v. Winter, 101 Wis. 494, 77 N. W. 883, 884.

In the case at bar the insurance company's claim was not presented within the time limited by the order of the probate court, and the possible cause of action that might have arisen upon the presentation of the claim was extinguished on June 27, 1901. There remained the possibility of a compliance with the second condition. Upon this subject the Supreme Court of Minnesota had stated that there could be no liability of the property of a deceased person in such a case unless there had been a compliance with that condition. Hunt v. Burns, 90 Minn. 172, 95 N. W. 1110, 1112, and cases there cited. "Where the application is made within the time limited and good cause is shown, it should be granted." Massachusetts Mutual Life Ins. Co. v. Estate of Elliot, 24 Minn. 134. The inference and the statute are conclusive that, when no application which pleads good cause is presented within the eighteen months, no application can be granted. "By the express provision of section 102 (4509), no claim or demand against an estate can be received after the expiration of the period of time originally fixed therefor, except for good cause shown. If cause be shown, the authority rests in the court, upon due notice to the executor or administrator, to receive and pass upon the claim or demand. When the court is asked to exercise its discretion, there must be presented not only a claim or demand against the estate, but good cause for opening the default and for relieving the applicant from apparent neglect as well. * * * No effort was made to comply with section 104 (4511), and until this was done the court would not be justified in either extending the time, or in considering that any claim or demand had been presented which it could receive or pass upon." Gibson v. Brennan, 46 Minn. 92, 94, 48 N. W. 460. No application was made in this case to any court to receive it, nor was any cause shown for receiving or considering any claim prior to July 18, 1902, but an action at law was commenced on February 7, 1902, against the executors in the court below upon a complaint which set forth no cause for the receipt or consideration of the claim by the court and prayed for no such relief. The cause of action stated in that complaint had expired on July 27, 1901, and the action could not be maintained. Security Trust Company v. Black River National Bank, 187 U. S. 236, 23 Sup. Ct. 52, 47 L. Ed. 147. The filing of that complaint, and the issue and service of the summons based upon it, did not constitute the commencement of the suit upon the cause of action for the receipt and consideration of the claim by the insurance company notwithstanding the expiration of the time limited by the order, because the averment of good cause

for the granting of that relief and the prayer for it were indispensable to a statement of it. Such a statement and application prior to July 18, 1902, were conditions precedent to the existence of that cause of action, and the burden of pleading and proving compliance with that condition rested upon the insurance company.

Again, such a statement of good cause and such an application for relief would have been indispensable to the cause of action in the probate court which made the order and which took judicial notice of it. Hence it was equally indispensable in the court below, which was administering the Minnesota law and stood in the shoes of the probate court.

And, finally, this cause of action could be maintained in the federal court in a suit in equity only, and the averments of the expiration of the time limited and of good cause for the receiving and consideration of the claim notwithstanding that expiration were indispensable to the statement of any cause of action in equity, because they alone disclosed the fact that the insurance company had no adequate remedy at law. Moreover, in a suit in equity matter in avoidance of the statute of limitations, or of any other like defense, must be pleaded in the bill.

For these reasons, the complaint filed in 1902 did not plead and was not based upon the cause of action in equity for a receipt and consideration of the claim notwithstanding the expiration of the time limited, and the commencement of the action upon it was not the beginning of a suit upon the equity cause. The result is that no suit was ever commenced upon that cause of action before August 5, 1905, when the bill in equity was filed, more than two years after that cause of action had expired.

2. When the eighteen months expired, the cause of action at law was dead, because it had not been commenced within the six months limited by the order of the probate court, and the cause of action in equity had expired, because no suit had been commenced upon it and no application for relief on account of it had been made within the eighteen months. Thereupon in July, 1905, the court granted a motion of the insurance company to permit it to amend its complaint in the action at law by pleading therein the cause of action in equity and praying for the receipt and consideration of its claim notwithstanding its failure to present it within the six months limited. The only purpose of this amendment was to avoid the condition and limitation of the statute, which was fatal to a suit upon this cause of action in equity commenced at any time after July 18, 1902. The insurance company sought by this amendment to take advantage of the general rule that an amendment relates back to the filing of the original complaint, so that the running of the statute against the new cause of action therein pleaded would cease on February 7, 1902, when the complaint on the action at law was filed, more than three years before this new cause of action was introduced. "But," says the Supreme Court, "this rule from its very reason applies only to an amendment which does not create a new cause of action. The principle is that as the running of the statute is interrupted by the suit and summons, so far as the cause of action then propounded is

concerned, it interrupts as to all matters subsequently alleged by way of amendment which are part thereof. But where the cause of action relied upon in an amendment is different from that originally asserted, the reason of the rule ceases to exist, and hence the rule no longer applies." Union Pacific Railway Co. v. Wyler, 158 U. S. 285, 297, 15 Sup. Ct. 877, 39 L. Ed. 983; Railway Company v. Cox, 145 U. S. 593, 601, 606, 12 Sup. Ct. 905, 36 L. Ed. 829; Sicard v. Davis, 6 Pet. 124, 8 L. Ed. 342. And this court has repeatedly held that an amendment which introduces a new and different cause of action, and makes a new and different demand, not before introduced, or made in the pending suit, does not relate back to the beginning of the action so as to stop the running of the statute, but is equivalent to a fresh suit upon a new cause of action, and the statute continues to run until the amendment is filed. Whalen v. Gordon, 95 Fed. 305, 309, 37 C. C. A. 70, 74; Van De Haar v. Van Domseler, 56 Iowa, 671, 676, 10 N. W. 227; Jacobs v. Insurance Co., 86 Iowa, 145, 53 N. W. 101; Buel v. Transfer Co., 45 Mo. 563; Scovill v. Glasner, 79 Mo. 449, 453; Crofford v. Cothran, 2 Sneed (Tenn.) 492; Railroad Co. v. Jones, 149 Ill. 361, 37 N. E. 247, 24 L. R. A. 141, 41 Am. St. Rep. 278; Eylenfeldt v. Steel Co., 165 Ill. 185, 46 N. E. 266; Railroad Co. v. Campbell, 170 Ill. 163, 167, 49 N. E. 314; Christy v. Farlin, 49 Mich. 319, 13 N. W. 607; Flatley v. Railroad Co., 9 Heisk. (Tenn.) 230, 237; Buntin v. Railway Co. (C. C.) 41 Fed. 744, 749; Newton v. Allis, 12 Wis. 378; Railroad Co. v. Smith, 81 Ala. 229, 1 South. 723. The authorities cited by the majority do not conflict with this rule. In Johnson v. Waters, 111 U. S. 640, 670, 672, 4 Sup. Ct. 619, 28 L. Ed. 547, the amendment did not introduce any new cause of action nor plead any new facts taking the case out of the statute of limitations which were not admitted by the answer before the amendment. See middle of page 672. In Bowden v. Burnham, 59 Fed. 752, 8 C. C. A. 248, and Carnegie, Phipps & Co. v. Hulbert, 70 Fed. 209, 16 C. C. A. 498, no new cause of action was introduced by the amendments, and in the latter case that fact is particularly noted at page 506. The fact that an amendment was made to the complaint at law on June 2, 1903, wherein the facts were pleaded upon which the insurance company relied in the subsequent amendment in the bill in equity, is not material, because the amendment of 1903 was useless in the action at law, and, if it had introduced the cause of action in equity, that cause could not have been maintained, because it had expired on July 18, 1902, months before the amendment was made.

It is no answer to the established rule here invoked that the cause of action at law and the cause of action in equity were founded on the same contract and transaction and sought the recovery of the same amount of money. So were the two causes in Whalen v. Gordon, 95 Fed. 305, 37 C. C. A. 70, and in many other cases in which this question is decided, and the two causes in Union Pacific Railway Co. v. Wyler, 158 U. S. 285, 297, 15 Sup. Ct. 877, 39 L. Ed. 983, were founded upon the same tort. The tests of identity of causes of action under this rule are: Will the same evidence sustain each? Will a judgment against the first bar the second? In the case at bar both these ques-

tions must be answered in the negative. The evidence requisite to sustain the original cause of action not only would not sustain, but would defeat, the second cause, because it would demonstrate that the claim was filed within the time originally limited, and that the insurance company had an adequate remedy at law. And a judgment against the first cause of action not only would not bar the second cause, but the defeat of the first cause was indispensable to the maintenance of the second cause, for the latter could be maintained only in case the insurance company had no adequate remedy at law. Schurmeier v. Connecticut Mutual Life Ins. Co., 137 Fed. 42, 46, 47, 69 C. C. A. 22, 26, 27. The cause of action in equity was a new and different cause from that stated in the complaint at law. It had expired long before it was introduced by the amendment. Therefore that amendment did not relate back to the time of the commencement of the action upon the first cause, and the cause of action in equity remained dead and barred.

3. On July 11, 1905, upon the petition of the insurance company, the court below made an order that the action at law should become a suit in equity. The only purpose of this order was to disregard and avoid the condition precedent and the limitation upon the claim or equitable estate of the insurance company by the use of the fiction of relation by endeavoring to cause the new cause of action to relate back to the commencement of the action upon the old cause. By reason of the rule which has just been considered, this order was ineffectual to accomplish that end.

Moreover, it was an excessive and erroneous exercise of the power of a federal court for it to undertake to transform a defeated action at law, against the protest of the successful defendant, into a suit in equity. There is one decision in the books that a suit in equity which failed might be transformed into an action at law by an order of the court. United States Bank v. Lyon County (C. C.) 48 Fed. 632, 635. It was rendered by Judge Shiras in 1892, and, so far as I can learn, it has never since been cited or followed. In his opinion in that case he said:

"I deem the question one of exceeding doubt, in a case brought originally in this court, and it can only be settled by an adjudication of the higher tribunal."

In that case the statute of limitations had not run against the action at law, and the only reason Judge Shiras gave for the order was that it would save the plaintiff the delay and expense of commencing a new action. Of this reason the Supreme Court has said, in a case that was removed from a state court:

"If this position were sound, it would allow a federal court of equity to entertain a purely legal action, transferred from a state court, on the mere ground, if it were not done, the plaintiff would have to commence a new proceeding. It surely does not need argument or authority to show that the jurisdiction of a federal court is not to be determined by any such consideration." Thompson v. Railroad Companies, 6 Wall. 134, 138, 18 L. Ed. 765.

So the power of a federal court to transform a suit in equity into an action at law is sustained by the doubting opinion of a single able and learned judge for a reason that the Supreme Court has decided is

not sound. In the case last cited from the Supreme Court an action at law was removed from the state court. The federal court undertook to transform it into a suit in equity, and after a bill had been filed in it rendered a decree thereon for the complainants. The Supreme Court reversed the decree, and remanded the action to the court below with directions that it should proceed as it was originally commenced, as an action at law.

Notwithstanding the fact that in the national courts the same judges in the same courtrooms administer rights and remedies in actions at law and in suits in equity, that which this court said when this case was last here still seems to me to be true. "In the federal courts an action at law cannot be maintained in equity, nor is an equitable cause of action or an equitable defense available at law. While in many of the states statutes exist which permit the joinder of causes of action at law and in equity in the same suit, this course is not permissible in the federal courts. In truth, the difference between causes of action at law and in equity is matter of substance and not of form, and no legislative enactment can really remove it. In the national courts this ineradicable difference is as sedulously preserved in the forms and practice available for their maintenance as it is in the natures of the causes themselves and in the principles upon which they rest. A legal cause of action may not be sustained in equity, because there is an adequate remedy at law, and it is only when there is no such remedy that a suit in equity can be maintained. Equitable causes and defenses are not available in actions at law, because they invoke the judgment and appeal to the conscience of the chancellor, and the free exercise of that judgment and conscience is forbidden in actions at law by the rule which entitles either party to a trial of all the issues of fact by a jury. Bagnell v. Broderick, 13 Pet. 436, 10 L. Ed. 235; Foster v. Mora, 98 U. S. 425, 428, 25 L. Ed. 191; Scott v. Armstrong, 146 U. S. 499, 512, 13 Sup. Ct. 148, 36 L. Ed. 1059; Lindsay v. Bank, 156 U. S. 485, 493, 15 Sup. Ct. 472, 39 L. Ed. 505; Schoolfield v. Rhodes, 82 Fed. 153, 155, 27 C. C. A. 95, 97; Davis v. Davis, 72 Fed. 81, 83, 18 C. C. A. 438, 440; Highland Boy Gold Min. Co. v. Strickley, 116 Fed. 852, 854, 54 C. C. A. 186, 188." Schurmeier v. Connecticut Mutual Life Ins. Co., 137 Fed. 42, 46, 69 C. C. A. 22, 26.

The union of legal and equitable causes of action in one suit is prohibited by section 913, Rev. St. (U. S. Comp. St. 1901, p. 683), and in removal cases, when such a union is permitted in the state courts from which they come, the causes of action must be separated into distinct actions at law and suits in equity in the national courts. Hurt v. Hollingsworth, 100 U. S. 100, 103, 25 L. Ed. 569; Cherokee Nation v. Southern Kansas Ry. Co., 135 U. S. 641, 651, 10 Sup. Ct. 965, 34 L. Ed. 295; Dillon on Removal of Causes, § 84. In the national courts legal causes of action either on removal or in original cases must be prosecuted in actions at law where the parties may have a trial by jury, and causes of action in equity and equitable defenses must be prosecuted in suits in equity where appeal may be made to the conscience of the chancellor. Buzard v. Houston, 119 U. S. 347, 351, 7 Sup. Ct. 249, 30 L. Ed. 451; Scott v. Armstrong, 146 U. S. 499, 512, 13 Sup. Ct. 148, 36 L. Ed. 1059.

And the federal courts may not lawfully transform by order or amendment against the objection of a defendant an original action at law into a suit in equity, or an original suit in equity into an action at law, because such a course of action would be to subject the defendant to a wholly different system of administration of rights and remedies from that to which he was liable under the original process. Blalock v. Equitable Life Assur. Soc. (C. C.) 73 Fed. 655, 660, 661; Stevens v. Brooks, 23 Wis. 196, 199; Kavanagh v. O'Neill, 53 Wis. 101, 10 N. W. 369, 370; Carmichael v. Argard, 52 Wis. 607, 9 N. W. 470, 471; Hayward v. Hapgood, 4 Gray (Mass.) 437; Gray v. Brown, 15 How. Prac. (N. Y.) 555; Sheldon v. Adams, 18 Abbott's Prac. (N. Y.) 405.

The process originally served upon the defendants required them to show cause why judgment should not be rendered against them for $7,075.90. They answered that it should not be because the insurance company had not presented its claim within the time limited by the order of the probate court, and had not within the eighteen months prescribed by the statutes applied to any court to receive and consider its claim for good cause notwithstanding the expiration of the time limited. That answer presented a complete defense, and it defeated the cause of action. After that defeat the court could not lawfully require the defendant to answer the new cause of action in equity by a mere order that the defeated action at law should be transformed by amendment into a suit in equity. They were entitled to a judgment of dismissal of their action at law. If this is a mistaken view of the law and of the practice, courts and lawyers from the foundation of our judicial system have been uselessly dismissing actions at law and bringing new suits in equity upon the same claims, and vice versa, when the first cause of action failed and the second existed, when they might have grafted the second upon the first by a mere motion. It does not seem to be probable that this practice, universal for more than a century in the national courts, with the single exception, so far as I can learn, of the hesitating order of Judge Shiras, has been baseless.

4. It seems clear to me, for the reasons that have been stated, that the claim of this insurance company ceased to be, and the cause of action in equity upon it expired, on July 18, 1902, because the company had then failed to comply with the condition precedent upon which alone the claim and the cause of action could thereafter exist. Hence in my opinion the subsequent acts of the company could not revive either the claim or the cause of action, and they are immaterial.

But if I am mistaken in this view, and if the acts of the company after July 18, 1902, are of any importance, it seems to me to have been guilty of such laches that it may not lawfully obtain relief in this action. If the administration statutes had been mere ordinary statutes of limitation, suits in equity upon claims affected by them would be barred by laches in the federal courts in ordinary cases in the same time that like suits would be barred under the administration statutes in the state courts, and that time was July 18, 1902, in this case. Kelley v. Boettcher, 85 Fed. 55, 62, 29 C. C. A. 14, 21. This suit in equity was not commenced until more than three years thereafter and this delay appears to constitute gross laches. No case has been found in which any

court of the state of Minnesota has ever sustained an application to the probate court filed after the expiration of the eighteen months to receive or consider a creditor's claim which was not presented within the time limited by the order of the probate court. In State ex rel. v. Probate Court, 67 Minn. 51, 54, 69 N. W. 609, 908, State ex rel. v. Probate Court, 79 Minn. 257, 258, 82 N. W. 580, and Smith v. Grady, 68 Wis. 215, 31 N. W. 477, cited by the majority, the applications in the Minnesota cases were filed within the eighteen months, in the first case within seven months and in the second within four months after the times respectively limited by the orders of the probate court expired, and in the Wisconsin case the dates are not given.

In Massachusetts Mutual Life Ins. Co. v. Estate of Elliot, 24 Minn. 134, the Supreme Court of Minnesota declared that the prompt and speedy settlement of estates is a general prevading and conspicuous purpose of our probate law, and that the provision under which applications for further time are made is exceptional and infringes upon that general purpose. In St. Croix Boom Corporation v. Brown, 47 Minn. 281, 284, 50 N. W. 197, that court held that an application made within the eighteen months, but two months after the time limited by the order of the probate court, was too late.

The insurance company filed its complaint upon the cause of action at law in this case on February 7, 1902. On February 27, 1902, the executors filed an answer in which they set forth the administration statutes of Minnesota, the order of the probate court which limited the time for the presentation of the claim of the insurance company, and they pleaded that the company could not recover because it had not applied to any court to receive and consider its claim after the time limited had expired. Here was express notice to the company of the law and of the true interpretation of it more than four months before the time within which the application might have been made expired; but the company made no application pursuant to the requirement of the statute. On December 1, 1902, the Supreme Court decided in Security Trust Company v. Black River National Bank, 187 U. S. 237, 23 Sup. Ct. 52, 47 L. Ed. 147, that the application must be made to the probate court, or by means of a suit in equity in the federal court to receive and consider such claims, before a recovery could be had upon them, and that no action at law upon them could be maintained in the federal courts; but the insurance company made no such application and commenced no such suit. On May 12, 1903, this court defeated the action at law, and cited that decision of the Supreme Court, so that the insurance company then knew the opinion of the Supreme Court that an application to the probate court, or a suit in equity in the federal court, was indispensable to its success; but it made no application and commenced no suit in equity until August 5, 1905, more than two years after that knowledge.

There are cases in the books in which courts of equity have relieved parties from mistakes of law. Many of them are cases where opposing parties have misled or deceived those who are relieved by false or mistaken representations. In the case at bar the executors notified the insurance company of the law more than four months before the time to file their application for relief, or to commence their

suit in equity, expired. The general rule is that mistakes of law furnish no ground for relief in equity and no excuse for laches. The statute in the case at bar was clear and plain; the timely application which it clearly required was possible and easy. In cases of this character it cannot be that because a litigant is of the opinion that a statute does not mean what it plainly reads, or because he has an erroneous opinion of the law, equity will relieve him from resulting loss or excuse his failure to comply with it. If such were the rule, every defeated litigant would be entitled to equitable relief. In my opinion, the failure of the insurance company from February 27, 1903, when the answer of the executors plainly stated the requirement of the law, until August 5, 1905, to make the application which the statute demanded, was such gross and culpable negligence that upon that ground alone relief in equity should be denied to it. Morgan v. Hamlet, 113 U. S. 449, 5 Sup. Ct. 583, 28 L. Ed. 1043; Hammond v. Hopkins, 143 U. S. 224, 12 Sup. Ct. 418, 36 L. Ed. 134; Continental National Bank v. Heilman, 86 Fed. 514, 30 C. C. A. 232; Bickford v. McComb (C. C.) 88 Fed. 428, 433.

Finally, the effect of the decision of this case is to give to a citizen of another state fifty-four months in which to present its application for good cause to the federal court to receive and consider its claim, notwithstanding its failure to file it within the time limited by the order of the probate court, while citizens of Minnesota are limited to eighteen months. The result is in this case, and if this precedent be followed it will be the result in other cases, that:

"The rights of those interested in the estate who are citizens of the state where the administration is conducted are materially changed, and the limitation which governs them does not apply to the foreign creditor who happens to be a citizen of another state." Yonley v. Lavender, 21 Wall. 276, 280, 22 L. Ed. 536.

The Supreme Court has repeatedly held that this must not be the rule, that administration laws are not merely rules of practice for the courts, but laws limiting the rights of the parties, and that they must be observed by the federal courts in the enforcement of individual rights, so that the rights of citizens of other states shall be the same as those of citizens of the state of the administration in similar circumstances. Yonley v. Lavender, 21 Wall. 276, 280, 22 L. Ed. 536; Security Trust Company v. Black River National Bank, 187 U. S. 211, 231, 23 Sup. Ct. 52, 47 L. Ed. 147.

It appears to me that in order to accomplish that result, to comply with the practice and rules which have been considered, and to follow the decisions of the Supreme Court which have been cited, the judgment in this case should be reversed.