STATE OF MINNESOTA, *ex rel.* James B. Beals, Administrator, *vs.* THE PROBATE COURT OF RAMSEY COUNTY and others.

April 22, 1878.

Real Estate of Deceased Persons—Liability for Debts.—The real estate of a deceased person descends to his heirs, or goes to his devisees, subject to administration and payment of his debts, and this liability continues not only against heirs and devisees, but purchasers from them, until the administration is closed.

Proceedings for proof of claims—Effect of Award.—To the proceedings before commissioners upon claims submitted for their allowance, all persons interested in the estate are parties, and all are bound by the award of the commissioners, or of the appellate court on appeal.

Same—Affidavit of no Debts.—An affidavit of the executor, filed in the probate court, that there are no debts, does not affect the right of creditors to have a commission, and to prove their claims and have them paid out of the estate.

Sale of Real Estate to Pay Debts.—Where there are debts against an estate duly allowed, and there is no personal property in the hands of the administrator to pay such debts, it is the duty of the probate court, on a proper application by the administrator, to grant license to sell real estate for that purpose.

Lien of Judgment against Deceased Person.—Laws 1876, c. 37, § 3, subd. 10, (Gen. St. 1878, c. 46, § 3,) is not retroactive.

*Certiorari* to the probate court of Ramsey county.

Philip Goldsmith died in 1863, domiciled in Philadelphia, Pa., leaving a will whereby he devised all his estate, real and personal, to his wife, E. Sarah Goldsmith, and appointed her his executrix. His will was proved in the probate court in the city of Philadelphia, and letters testamentary were issued to the executrix. The testator left real estate in Ramsey county, but no personalty in this state, and on October 22, 1863, his executrix filed in the probate court of that county a duly authenticated copy of his will and probate, from the Philadelphia probate court, and the proper record was made in the registry of deeds of Ramsey county. In August, 1866, letters testamentary were issued to the executrix by the Ramsey county probate court, and she filed her affidavit that there were no debts due from the estate of the deceased. The testator left personal property to a large amount ($35,000) at Philadelphia, at the time of his death, as shown by the inventory of his estate filed there.

In 1858, Philip Goldsmith had conveyed to one William Coffin, with covenant of warranty, certain real estate in Ramsey county. In November, 1869, Coffin was evicted from the lands so conveyed to him, (see *Greve* v. *Coffin,* 14 Minn. 345,) and in the same month he applied to the Ramsey county probate court for the appointment of commissioners to receive and examine claims against the estate of Philip Goldsmith. Commissioners were appointed, who afterwards allowed and reported two claims against the estate, one in favor of William Paist, for a sum less than $100, and one in favor of William Coffin, for the breach of the covenant of warranty, amounting to over $28,000. The executrix appealed to the court of common pleas from the allowance of Coffin's claim. Pending the appeal, and in the year 1872, Coffin died testate, domiciled in Philadelphia, where his will was proved and letters testamentary issued to his executors. At the time of his death, Coffin was seized of real estate in Minnesota, and Lorenzo Allis was appointed by the probate court of Ramsey county administrator of such estate. The allowance of Cof-

fin's claim was affirmed by the court of common pleas, and on further appeal, by this court, (see *Allis* v. *Goldsmith*, 22 Minn. 123,) and judgment was entered in the court of common pleas, in favor of Allis, as administrator of Coffin, and against E. Sarah Goldsmith, as executrix of Philip Goldsmith, for the amount of Coffin's claim allowed by the commissioners, with interest, being more than $42,000. Transcripts of the decision and judgment of the court of common pleas and of this court were filed in the probate court, and Allis, as administrator of Coffin, applied to the latter court for the removal of Mrs. Goldsmith as executrix, on the ground that she was not then and had not for many years been within this state, and for the appointment of a suitable person in her stead. The application was granted, and James B. Beals, the present relator, was appointed administrator, with the will annexed, of the estate of Philip Goldsmith.

The relator, as such administrator, applied to the probate court of Ramsey county for license to sell certain parcels of real estate in that county, of which Philip Goldsmith died seized, for the purpose of paying a balance of more than $40,000, still due on the judgment in favor of Allis as administrator of Coffin. The application was opposed, as to two of the parcels, by Theresia Eibert, William Dawson and Robert A. Smith, who held these parcels under sales and conveyances made by Mrs. Goldsmith, the executrix and devisee of Philip Goldsmith, in 1866 and 1868.

The probate court refused to grant the license to sell these two parcels, and thereupon this writ of *certiorari* was applied for and issued, to review the action of the probate court.

*Allis & Allis*, for relator.

*R. B. Galusha* and *Wm. S. Moore*, for respondents.

GILFILLAN, C. J. Under the laws of this state, the estates of deceased persons, testate or intestate, are subject to the payment of their debts in the course of administration provided by statute. The difference between personal and rea[l] estate as assets for this purpose is that the title to the former

vests in the executor or administrator, and it may be disposed of by him without the order or license of the probate court, and it is the primary fund for payment of debts, while the title to real estate vests in the heir or devisees, and it is the secondary fund, to be resorted to only after the personal property is exhausted, and then only upon the order or license of the court. The title vests in the heir or devisee, subject to the claims of administration upon it. The executor or administrator is entitled to the possession, and to the rents, issues and profits of real estate, until the estate is settled, or until delivered over, by order of the probate court, to the heir or devisee. Gen. St. *c.* 52, § 6. He is accountable for the income of the real estate while it remains in his possession. Gen. St. *c.* 54, § 7. He is also liable if he neglects to raise money by collecting the debts or selling the real or personal estate. Id. § 8. After the executor or administrator has paid the expenses of administration, and debts, and such allowances to the widow and children as the statute provides for, the probate court by decree assigns the remainder of the estate, real and personal, among those entitled under the will; or, if there be none, according to the statute of descent or distribution. Gen. St. *c.* 56, §§ 4–23. This decree is not necessary to vest the title to the real estate, for that passes upon the death of the decedent. The effect of the decree upon real estate is to discharge it from the administration. Until then, it is assets and is liable to be applied, in default of personal property, to payment of debts and charges of administration, whether it remain in the hands of the heir or devisee, or has been by him conveyed to another. A purchaser takes with this liability upon it.

The debts are ascertained by commissioners. Their report, when filed, allowing or disallowing claims, has the effect of a judgment, and, unless appealed from, is final. How far their allowance of a claim is binding—that is, upon whom it is conclusive—is not entirely free from doubt. It is certainly conclusive upon the creditor whose claim is allowed or rejected,

and upon the executor or administrator. Is it conclusive upon other creditors, next of kin, legatees, heirs and devisees? We find only three cases which appear to involve the point. *Garnett* v. *Macon,* 6 Call, 308; *Alston* v. *Munford,* 1 Brock. 266; and *Stone* v. *Wood,* 16 Ill. 177. The first two were cases of judgments in ordinary actions, and in the first the decision is placed on the ground that the heir is no party to the action, cannot controvert the testimony, adduce evidence in opposition to the claim, nor appeal from the judgment. *Stone* v. *Wood* was, like this, an application for license to sell real estate to pay debts allowed by commissioners, and appears to have been under a statute similar to ours, and the court, while apparently admitting that the heir might contest the claim before the commissioners, and appeal from their decision, places its decision on the ground, narrower and more technical than that taken by the court in *Garnett* v. *Macon,* that the heir is not in privity of estate with the executor, and, therefore, not concluded by the allowance of the debt. However it might be in an ordinary action between an administrator or executor and a third person, any one interested in the estate may contest claims before the commissioners, and appeal from their decision, if the executor or administrator declines to do so. Gen. St. *c.* 53, §§ 26, 27. The proceeding before the commissioners is not an adversary suit between litigant parties, the creditor on one side, and the executor or administrator on the other, but is in the nature of a proceeding against the estate, which estate is, in theory, in the probate court, for the purpose of being administered by distribution among creditors, heirs, devisees, legatees and next of kin. Though the proceedings on the part of the estate are conducted in the name of the executor or administrator, he is only a nominal party; the actual parties are those interested in the estate. We do not think it was intended that any party might neglect his opportunity to contest a claim before the commissioners or on an appeal, and then contest it on an application for its payment, but that the award of the com-

missioners, if not appealed from, and the judgment of the appellate court, in case of appeal, should be final and conclusive upon all parties interested in the estate, in all subsequent proceedings for its administration. The judgment on the claim of Coffin was, therefore, conclusive.

The holder of that judgment had a right to have it satisfied, so far as it could be, out of the property belonging to the estate. The real estate, the title to which is in Eibert, and in Dawson and Smith, belongs to the estate for the purposes of administration, as much as it did immediately after the death of Goldsmith. It was devised by the will to Mrs. Goldsmith, and she conveyed to them; at the time of such conveyance, there had been no administration in this state. The most that had been done was to file, in the probate court of Ramsey county, a certified copy of the will and of the probate, from the court in Philadelphia where the will was proved, to make the proper record in the office of the register of deeds, and to take out letters to the executrix, Mrs. Goldsmith. She filed an affidavit that there were no debts. While this affidavit, if made in good faith, may have operated as an excuse to her for not applying for a commission to audit claims, it could not bar, nor in any manner affect, the rights of creditors to proceed against the estate for satisfaction of their claims. Nor could she, by conveying as devisee the real property, affect its status or the rights of creditors with respect to it. Their right to have the property applied in satisfaction of their claims could be barred only in the manner pointed out by the statutes.

The judgment of Coffin being a valid claim against the estate, and the lands owned by Eibert, and Dawson, and Smith, being, for the purposes of administration and payment of debts, a part of the estate, the only question is, is it necessary to sell lands to satisfy the judgment? So far as the administration in this state is considered without reference to the administration in Pennsylvania, there can be no doubt of it. There is no personal property in the hands of the admin-

istrator, and there does not appear to be any other real estate to which resort may be made. It is claimed, however, that the principal and original administration of the estate is in Philadelphia; that the administration in this state is in its nature ancillary; and that, as Coffin was not a resident of this state, he ought to have sought satisfaction of his claim in Philadelphia; and that, certainly, it cannot be enforced against real estate here, while there is, in the hands of the administrator in Philadelphia, personal property of the estate applicable to the payment of debts, before resorting to real estate. How it would be if there were, in fact, personal property applicable to debts in course of administration at Philadelphia, it is unnecessary to consider, for such does not appear to be the case. The copy of the inventory of personal property, filed by the executrix in the court at Philadelphia, in 1863—and no other record to show the condition of administration there was introduced—does not show it. If the amount of the personal property set out in the inventory did, at that time, in fact belong to the estate, there is no presumption that it continued so for fourteen years. The commencement of administration in Philadelphia being shown, the presumption is rather that it proceeded in due course and has been closed. Any one claiming the contrary must show the condition of such proceedings at or near the time of the proceedings in question here.

If there were anything in the suggestion that Coffin was a non-resident, and that the proper place for him to enforce his claim was in Philadelphia, we think the proper time to raise the objection was when he presented and offered to prove his claim before the commissioners. As it has been presented and allowed in the course of administration here, there is no reason why the administration, including the application of the estate here to the payment of this debt, should not be fully completed.

It is claimed that Laws 1876, c. 37, § 3, subd. 10, (Gen. St. 1878, c. 46, § 3,) which provides "that no debt or claim

against any deceased person which had not become a lien upon his real estate before his death shall continue to be a lien upon any such real estate after the lapse of three years from the date of such death," has extinguished the right to sell this real estate to pay this debt. This provision is not in express terms applied retroactively, and there is nothing which shows an intent to include other than future cases. The entire chapter is prospective, and such being the case, it would be a violent construction to give the language quoted a retrospective meaning.

The decision of the probate court is reversed, and that court is directed to grant the license to sell the real estate as applied for. The cause will be remanded for that purpose.