STATE OF MINNESOTA ex rel. SECURITY TRUST COMPANY v. PRO-
BATE COURT OF ROCK COUNTY.[1]

December 28, 1896.

Nos. 10,200—(54).

**Decedent's Estate—Presentation of Claims.**

Held, that the probate court erred in refusing to allow the relator to present its claim against the estate of the deceased after the expiration of the time limited for the presentation of claims.

January 19, 1897.

**Certiorari to Probate Court—Right to Costs.**

Pursuant to the order directing the issuing of a writ of certiorari to the probate court, a citation was served upon the opposite party in interest to show cause why the action of that court should not be reversed. The relator prevailed. Held, that he was entitled to costs and disbursements against the opposite party in interest, although the writ was directed only to the probate court.

Certiorari to the probate court for Rock county, and James Marshall, judge of said court. Reversed.

*Edmund S. Durment,* for petitioner.

*A. J. Daley,* for respondents.

MITCHELL, J. Certiorari to review the action of the probate court in refusing to allow the relator to present its claim against the estate of James Thompson, deceased, after the expiration of the time limited.

Thompson was a resident of Davenport, Iowa, and died testate in that state January 2, 1895, and his will was admitted to probate,

[1] Reported in 69 N. W. 609, 908.

and letters testamentary issued to the executor and an administrator with the will annexed on the 15th of the same month. Thompson having died seised of certain land in Rock county in this state, on February 12, 1895, his will was admitted to probate in that county, and letters testamentary issued to the same persons to whom letters had been issued in Iowa, both being residents of that state. On March 2, 1895, the probate court of Rock county made an order limiting the time for the presentation of claims against the estate to 6½ months, which would expire September 17, 1895. The only notice given of this order was by publication for three weeks in a weekly paper published in Rock county. At the same date the probate court fixed the time for settling the estate at 18 months, which would expire September 2, 1896.

At the time of Thompson's death the relator, a domestic corporation, whose principal place of business was in St. Paul, held promissory notes against him for $10,000 and interest. On March 28, 1895, it presented these notes in the court in Iowa as a claim against his estate, which was duly allowed. On April 16, 1896, the relator presented an application to the probate court in Rock county for leave to file these same notes as a claim against the estate in this state. This application, which was accompanied by due proof of the claim, was in form of affidavits of the secretary and president of the relator, stating, in substance, that neither they nor any other officer of the company had any knowledge or information, until the last of February or first of March, 1896, that Thompson left any property in this state which could be administered on here, or that administration had been or was intended or contemplated being taken out in this state; that, although the president of the relator had several written communications and personal conversations with one of the administrators of the estate relative to its claim, the administrator never stated, or even hinted, that he had been appointed in this state, or contemplated or intended that administration should be had here, or that there was any property of the deceased in this state which could be administered therein; that, after hearing that administration proceedings were being had in Rock county, he consulted an attorney as soon as he could, and by his advice wrote to the probate judge of Rock county to ascertain the facts, and was informed, in reply, on April 2, 1896, that administration had been taken out in that county,

and that the time for presenting claims had already expired; and that thereupon he caused the papers to be prepared and presented, applying for an extension of the time and for leave to present the claim.

The only affidavit opposed to these was one by the Minnesota attorney for the estate to the effect that, in an interview had with the president of the relator about February 14, 1896, on another subject, he made statements to him to the effect that there was certain litigation in the probate court of Rock county regarding the estate. This the president denies, but its only materiality is that, if true, it would tend to prove that he had information which should have put him on inquiry a few days earlier than he had stated in his affidavit. The Iowa administrator, referred to in the president's affidavit, also interposed his affidavit, in which he does not deny any material allegation of the president or secretary.

As reasons, however, why the relator should not be allowed to present its claim in Minnesota, he states (1) that the claim had been presented and allowed in Iowa; (2) that the relator held, as collateral security for the payment of its notes, $10,000 par value of bonds of the St. Paul Investment & Savings Society of St. Paul, Minn., a corporation organized under the laws of this state; (3) that the president of the relator knew that Thompson had assets in Minnesota, and particularly that he was a large stockholder and bondholder in the St. Paul Investment & Savings Society.

But the administrator is significantly silent as to the condition of the estate in Iowa, or whether the assets in that state will pay the claims presented against it in full or any considerable part of them. He is also silent as to the actual value of the bonds held by the relator as collateral. His third allegation also fails to make it appear that Thompson had any personal property in this state which would warrant ancillary administration. The fact that he had stock or bonds in a corporation of this state would not necessarily show that. Putnam v. Pitney, 45 Minn. 242, 47 N. W. 790. And, even if he did, a person would naturally look for such administration proceedings in St. Paul, where the corporation had its place of business, and not down in Rock county. It does not appear that anything has been done in this state by way of selling property, or closing the administration of the estate, or that the allowance of relator's claim will delay the settlement of the estate a single day.

Upon this state of facts we think the probate court erred in refusing to grant the relator's petition. There are some circumstances which naturally tend to create a suspicion that one of the objects of the administration proceedings in Rock county, so far from the domicile of the deceased, and presumably distant from the residence of creditors, was to bar claims, so that this valuable real estate in that county might pass to the devisee free from claims against the estate. The attitude of the parties—one anxious to have its claim allowed in this state and the other earnestly opposing it—indicates, notwithstanding the silence of their respective affidavits, that neither the collateral held by the relator, nor the assets in Iowa, nor both combined, will pay this claim. As the court in Iowa has no jurisdiction of land situated in Minnesota, it is not apparent that there is any way by which that property can be subjected to the payment of relator's claim, except through the probate proceedings in Rock county. The fact that the claim has been presented and allowed in Iowa, or the fact that the relator holds collateral security, are neither of them any legal reason why the claim should not be allowed in this state.

There is nothing tending to show any lack of diligence on the part of the relator, unless it be the lapse of time (six or seven weeks) between its president's first hearing of the probate proceedings in this state and his presentation of this application. But, in extenuation of this delay, it may be suggested that it does not appear that he knew or had reason to suppose, prior to April 2, that the time for presenting claims had expired, or was about to expire, so as to require special haste. But, as was said in Re Mills, 34 Minn. 296, 25 N. W. 631, the same strictness in regard to diligence should not necessarily be adopted in such cases as in case of an application for relief from a default in a civil action, when the rights of the other party are directly involved. The sole object for limiting the time for the presentation of claims is to secure the prompt settlement of estates. In the present case there is not even a suggestion that the granting of relator's application would in any way delay or prejudicially interfere with the settlement of the estate, or cause it any possible injury, except to subject it to the chance of having to pay a just claim. Under the circumstances, to refuse relator the privilege of presenting its claim would be unreasonably harsh.

Order reversed, and the cause remanded to the probate court, with

directions to allow the relator to present and prove its claim within such reasonable time as to the court may seem proper.

The following opinion was filed January 19, 1897:

MITCHELL, J.   On appeal of the relator from the action of the clerk in refusing to tax costs in his favor and against the personal representatives of the estate of James Thompson, deceased.

Pursuant to the order directing the issuing of the writ of certiorari, a citation was served on the attorney of the personal representatives of the estate to show cause why the order of the probate court should not be reviewed and reversed.   They, and not the probate court, were the real parties in interest.   Under these facts, the relator, as the prevailing party, is entitled to have his costs and disbursements taxed against them.   G. S. 1894, § 5510, provides that:

"When an action or proceeding is instituted in the name of the state on the relation of any citizen such relator is entitled to and liable for costs and disbursements in the same cases and to the same extent as if such action or proceeding had been instituted in his own name."

As costs cannot be taxed against a court, this must mean that they shall be taxed for or against the real party in interest.   In another case we refused to allow costs against these same parties, because the writ was not directed to them, and they had never been cited to appear and take part in the proceedings in this court.   A subsequent, but cursory, examination of the authorities, leaves us under the impression that in other states it is the practice to tax costs against the real respondents in interest, although they were not cited in, and the writ was directed only to the court or tribunal whose action is sought to be reviewed.

Leaving for future consideration the correctness of this practice, and also whether the better practice is to have the writ directed to both the court and the real parties in interest, or to the court alone, accompanied, as in this case, by a citation to such parties to appear and show cause, we are clearly of opinion that, when either is done, the relator, if successful, is entitled to costs and disbursements.

The clerk is hereby directed to tax costs and disbursements, as contained in the bill presented, in favor of the relator and against Thompson and Lane as executor and administrator of the estate of James Thompson.