IN RE ESTATE OF HENRY SCHRAM, JR.
KATHERINE SCHRAM, ADMINISTRATRIX, APPELLEE, V. A. H.
BERBIG, ANCILLARY ADMINISTRATOR, APPELLANT.

271 N. W. 694

FILED FEBRUARY 26, 1937.   No. 29844.

*Minor & Minor,* for appellant.

*T. F. Hamer* and *E. G. Reed, contra.*

Heard before GOSS, C. J., DAY, PAINE and CARTER, JJ., and TEWELL and YEAGER, District Judges.

CARTER, J.

This is an action brought by Katherine Schram, administratrix of the estate of Henry Schram, Jr., deceased, against A. H. Berbig, administrator of the ancillary estate of Henry Schram, Jr., in Nebraska, to obtain an order directing the administrator of the ancillary estate to transfer to the domiciliary administratrix sufficient funds to pay the remaining unpaid claims against the domiciliary estate in Colorado. The trial court allowed the application and the administrator of the ancillary estate appeals.

The record discloses that Henry Schram, Jr., a resident of Cheyenne county, Colorado, died on October 5, 1932. At the time of his death he was the owner of real and personal

property in Cheyenne county, Colorado, and of real property in Buffalo county, Nebraska. Proceedings to administer his estate were commenced in Cheyenne county, Colorado, and Katherine Schram, the surviving widow, was appointed administratrix. Ancillary administration proceedings were also commenced in Buffalo county, Nebraska, and A. H. Berbig was appointed ancillary administrator.

It appears that claims were filed against the estate in Buffalo county, Nebraska, for the payment of which it became necessary to sell the Nebraska land. Upon payment of all claims, there remained in the hands of the ancillary administrator the sum of $2,753.59.

It further appears that, after the assets of the domiciliary estate in Colorado had been exhausted, there remained unpaid a claim of $200 for attorney's fees and a $2,000 widow's allowance authorized by the laws of Colorado. The executrix had on hand the sum of $732.37 to apply upon the claims. She thereupon instituted the suit at bar to have the sum of $1,267.63 paid to her by the ancillary administrator in Nebraska to complete the payment of the $2,000 widow's allowance.

The part of the Colorado statute that is material is as follows: "If any decedent leaves a widow residing in this state, in all cases she shall be allowed to have and retain as her sole and separate property, the sum of two thousand dollars in cash, or at her election, the equivalent thereof in value of real and/or personal property, to be set aside and awarded in the manner now provided by law." Comp. Laws (Colo.) 1921, sec. 5347, as amended by chapter 184, Laws (Colo.) 1929. It is stipulated by the parties that the widow's allowance of $2,000 was in all respects properly made under the laws of Colorado.

The ancillary administrator contends that, under the Nebraska statutes, the surplus of the proceeds from the sale of the lands located in Nebraska cannot be subjected to the payment of the widow's allowance made in Colorado. The pertinent part of the Nebraska statute is as follows: "In all cases of sale by an * * * administrator * * * under

a license granted by any district court by virtue of the provisions of law, whether such * * * administrator * * * was appointed in this state or elsewhere, the surplus of the proceeds of the sale remaining on the final settlement of the accounts shall be considered as real estate and disposed of among the persons, and in the same proportion as the real estate would have been by the laws of this state if it had not been sold." Comp. St. 1929, sec. 30-1138. The question for determination is whether the sum of $1,267.63 should be paid by the ancillary administrator to the domiciliary administratrix to discharge the widow's allowance of $2,000, or whether the whole sum of $2,753.59 should be distributed to the heirs of Henry Schram, Jr., as if it were real estate.

An authoritative text-writer states the applicable rule as follows: "An allowance can be granted only by a court in the state of domicile of the husband at the time of his death. If a widow's allowance has been granted by the court of the domicile it cannot be enforced against land of the deceased in another state." 2 Beale, Conflict of Laws, 1029, sec. 302. 1.

In Restatement, Conflict of Laws, sec. 302, the rule is expressed as follows: "If a widow's allowance has been granted by a court in the state of domicile of her deceased husband, it constitutes a valid claim against movable assets in another state." In comment a. thereto appears the following: "An order for a widow's allowance cannot be enforced against land in another state."

The leading case on this subject is *Short v. Galway*, 83 Ky. 501, 4 Am. St. Rep. 168. In that case the writer of the opinion says:

"The right, therefore, given by the statute of Ohio to the wife at the time of her marriage with Mitchell to one-half of his real estate, if such was the law, in the event she survived him, would not be enforced by the courts of this state, nor would the right acquired by the wife to enforce her claim for an allowance, in the event she survived her husband, against his real estate, be enforced, because by

the law of this state the land passes to the heir free from any such encumbrance, and if permitted to enforce such a lien by reason of the law of another state, it would, in effect, be giving to the wife an interest in the land; for if she can subject it because of a claim existing alone by reason of the marital relation, independently of any express contract, the statute of another state might give to her such an allowance as would swallow up the entire realty passing to the heir, although located in another jurisdiction. The statute of Ohio might provide that, in case of intestacy and dying without children, the widow should have not only the year's support, but a sum equal in value to one-half of the realty left by the decedent to constitute a lien upon the entire estate until payment. To enforce such liens in this state would be to change the course of descent, and take from the heir his lawful inheritance.

"As in this case the widow is allowed four thousand dollars for her support for one year, which is five times the sum in value that is allowed the widow in this state, it is a lien by the law of Ohio on the real as well as the personal estate, and can be enforced; but when undertaking to deprive the heir in this state of the inheritance by such a proceeding, you permit by indirection the law of another state to control or determine the laws of descent in subjecting the realty, not by reason of any express contract, but because of the rights of a party created by the statute of another state, springing solely from the marital relation. If personal estate, the judgment might be enforced, because that passes by the law of the domicile, and the courts of this state, if called on, would consult the Ohio statutes and the decisions of the courts of that state in determining the rights of the parties."

See, also, *Hansel v. Chapman*, 2 App. D. C. 361; *Smith v. Smith*, 174 Ill. 52, 50 N. E. 1083.

Where land is sold by order of court for any purpose, the character of the property is changed only so far as may be necessary to accomplish the particular purpose. Where, as in the case at bar, an administrator sells real

estate of his testator to pay his debts, the conversion of the realty into personalty is completed only to the extent to which the purchase money is required for the particular objects for which the sale takes place; and the excess, though in the form of money, remains impressed with the character of real estate for the purpose of determining who is to receive it. The proceeds attempted to be reached in the present case were derived from the sale of lands in Nebraska and are subject to being distributed as real estate under Nebraska law. A judgment by the courts of Colorado determining a course of descent of lands in Nebraska different from the law of Nebraska would be a nullity, and, likewise, a judgment amounting to the establishment of a lien against these proceeds to satisfy a widow's allowance decreed by the Colorado court arrives at the same result. To say that the law of the domicile may make the heirs liable to the extent of the real estate inherited, located in another state, to satisfy this widow's allowance would in effect subject the manner of inheritance to a law of another forum than that in which the lands are located. We necessarily conclude that the trial court erred in directing the transfer of the money herein involved to the domiciliary administratrix in Colorado.

Appellee contends that the transfer should be sustained as a matter of comity. Comity has been defined as "a willingness to grant a privilege, not as a matter of right, but out of deference and good will." *Dow v. Lillie*, 26 N. Dak. 512, 144 N. W. 1082. "The term 'comity,' as defined in Bouvier's Law Dictionary, is 'courtesy; a disposition to accommodate. Courts of justice in one state will, out of comity, enforce the laws of another state, when by such enforcement they will not violate their own laws or inflict an injury on some one of their own citizens.'" *Franzen v. Zimmer*, 90 Hun (N. Y.) 103, 35 N. Y. Supp. 612. The authorities seem to hold that, as a matter of comity, funds can be transferred from the ancillary to the domiciliary estate to pay debts incurred by the testator prior to his death or for the payment of a widow's allowance where the

funds were derived from the sale of personal property in the ancillary estate. But such a transfer of funds cannot be sustained as a matter of comity between states where it conflicts with the express provisions of our statute relative to the descent of real property. The order of the Colorado court allowing the widow's allowance can have no extraterritorial effect upon the real estate of deceased located in Nebraska.

For the reasons herein set forth, the judgment of the trial court is reversed and the cause is remanded.

REVERSED.