ALBERT DEHNHOFF AND ANOTHER v. JOSEPH M. HEINEN AND OTHERS.[1]

No. 31,589.

February 25, 1938.

[1]Reported in 278 N. W. 351.

*Frank J. Danz,* for appellants.

*Kyle & Kyle,* for respondents Heinen.

*W. P. Westfall,* for respondents Taylor.

JULIUS J. OLSON, JUSTICE.

Plaintiffs brought this suit to foreclose a mortgage upon certain premises in St. Paul. Being successful only in part, they have appealed from the resulting judgment.

Defendants Heinen and wife are, and during all the times hereinafter stated were, the registered owners of the involved premises. In 1926 they borrowed $2,500 from plaintiffs, in evidence whereof they executed and delivered a promissory note with interest coupons attached payable to the lenders as joint tenants; and as security for the indebtedness also executed and delivered the mortgage here involved. The mortgage tax was paid and the instrument promptly registered. A duplicate certificate of title showing this mortgage to be a first and only lien upon the premises was procured and furnished. Insurance policies with loss payable riders to plaintiffs as mortgagees were likewise procured and delivered. These matters were all handled through one Matthews, who was engaged in that kind of business in St. Paul, and the note and coupons were made payable at his office. All of the mentioned papers were delivered to and since have been held by plaintiffs. The loan matured in 1929 and was then extended by appropriate agreement, duly registered. New interest coupons were executed, six in number, maturing semiannually thereafter. The extension matured March 10, 1932. Prior thereto plaintiffs had informed Matthews that they wanted their money. He informed them that he thought he had another party who would furnish the money with which to accomplish this result if the owners failed to meet the obligation. He accordingly communicated the information to Mr. Heinen, who later called at the office for the purpose of refinancing the loan. Matthews was well acquainted with defendant Taylor, who in the past had acquired loans through his office. Negotiations followed. Taylor was shown the premises. He deemed certain improvements necessary before a loan would be placed. Arrangements were made to meet these requirements. Heinen fully performed so the premises were acceptable to Taylor. In the meantime plaintiffs were assured by Matthews that negotiations were going forward and that their mortgage would be paid out of a new mortgage to be placed on the

property; that in the meantime their interest would be paid although the last coupon had been met. Thus matters rested until September 12, 1932, when Matthews wrote Taylor acknowledging receipt of check for $2,500 "for the Heinen mortgage." He also informed Taylor that "as soon as we have the documents recorded, we will mail them to you." On September 28 Matthews again wrote Taylor inclosing the mortgage note "covering $2,500 mortgage loan" upon the property, and expressing the "hope within a few days to mail you the mortgagee's duplicate certificate of title, together with the insurance policies." As a reason for not having already accomplished this purpose, Matthews stated that one of the mortgagees (plaintiffs) "is out of the city. As soon as he returns, we will be able to get his signature on the satisfaction and close up the matter."

When Matthews received the $2,500 check from Taylor he promptly proceeded to use the funds as if they were his own. Speaking plainly, he embezzled the money. The Taylor mortgage was not registered nor was plaintiffs' mortgage paid. Matthews, to lull both plaintiffs and the Taylors into supposed security, always had some excuse to offer that matters were not closed because of varied and sundry reasons; but he made interest remittances to both plaintiffs and the Taylors as though everything were safe and only some minor detail remained to be adjusted. Thus matters drifted over a period of more than two years when finally Mr. Taylor concluded to take matters in hand without Matthews' intervention. In the summer of 1936 plaintiffs commenced this suit.

The complaint is in the usual form in proceedings of this nature. The due and proper execution of the note, mortgage, and coupons is not in issue. Defendants concede them to have been valid and subsisting engagements. In their answers defendants claim that the mortgage debt was paid on September 10, 1932. In the Taylors' answer it is alleged that Matthews was the agent of plaintiffs at the time Taylor delivered his $2,500 check to Matthews, hence that the mortgage was thereby paid and should be discharged. They ask relief accordingly.

In the findings and judgment the court held that plaintiffs were possessed of "a valid first mortgage lien for the sum of $1,208.99." In that sum with interest plaintiffs were awarded recovery. As to the Taylors, the court found that they had a "valid second mortgage" for $791.01, and in that sum with interest since March 10, 1936, they were given judgment. Directions for sale of the property in the usual form were provided thereby. Plaintiffs' motion for amended findings was denied, whereupon judgment was entered and, as we have said, this appeal followed.

The entire difficulty here presented is clearly due to the perfidy of Matthews. The parties to this suit have acted throughout in good faith. The loss to be sustained by one or more of them necessarily depends upon finding appropriate answer to the question: "Whose money did Matthews embezzle?"

■ Obviously the answer to the question must be found in the law of agency. The principle here involved can best be stated in the language of Mr. Justice Mitchell in Burchard v. Hull, 71 Minn. 430, 435, 74 N. W. 163, 164:

"It is axiomatic in the law of agency that no one can become the agent of another except by the will of the principal, either express or implied from the particular circumstances; that an agent cannot create in himself an authority to do a particular act merely by its performance. It is equally axiomatic that the extent of the authority of an agent also depends upon the will of the principal, and that the latter will be bound by the acts of the former only to the extent of the authority, actual or apparent, which he has conferred upon the agent."

■ When Mr. Taylor on September 10, 1932, delivered his check payable to Matthews for $2,500 he knew that there was a prior mortgage to be paid out of the money represented thereby. Prior to that time he had visited the premises, inspected the improvements made, and found these satisfactory. After turning the money over to Matthews he relied upon the latter's statement that "he [Matthews] would attend to it and I trusted him to do it; having the mortgage note, I felt secure, of course." He also testified that

"inside of a week or two after" sending the $2,500 check he received the Heinen note. As his professional engagements are those of a clergyman, it is perhaps natural to expect that he knew little about recording or registration proceedings. That is why he placed confidence in Matthews, who had acted for him in the procurement of many prior loans. In the language of the trial court: "He was dealing through a party in whom he apparently had the utmost confidence."

Over a period of nearly two years Matthews continued to collect from Heinen interest payments upon the Taylor mortgage, remitting to the latter the semiannual instalment payments. During all this time Matthews was in possession of the mortgage. Taylor had possession only of the note and coupons executed by the Heinens, and an insurance policy upon what he supposed was the mortgaged premises. Not until the late summer of 1934 did he become dissatisfied with the manner in which Matthews was handling his affairs, principally, the tardiness on Matthews' part in making remittance of interest collections. He then took the matter out of Matthews' hands and dealt directly with Mr. Heinen, from whom he later collected, not only subsequently maturing interest coupons, but also $500 to apply upon the principal of his loan.

■ There can be no question as to the relationship between Matthews and the Heinens; the former was their agent. This is so beyond question because after the Taylor loan had been signed and acknowledged by them (September 20, 1932) Matthews presented a bill for recording and filing fees and expenses, including payment of mortgage tax and satisfaction of the then existing mortgage of plaintiffs, also charging the borrowers with a $50 commission. He as a matter of fact charged items of expense never paid by him, such as mortgage tax and filing expenses. All this was promptly paid by them in good faith.

■ As between plaintiffs and Matthews, it is urged in defendants' behalf that, while no express agency was established, yet the conduct of the parties was such as to justify a finding that Matthews was plaintiffs' agent in collecting the mortgage debt itself. It is said that they had permitted Matthews to collect interest coupons

and that they continued accepting interest payments after the last coupon matured; hence, the note and coupons being payable at Matthews' office, therefore an inference could be drawn that he had an agent's authority to collect also the principal sum. But the naked and established fact remains that at no time had plaintiffs by word or other act authorized the collection of the principal sum through Matthews or anyone else. They retained possession of the note, the mortgage, and the insurance policies. True, in 1934, they had at the request of Mr. Matthews let him have the use of their duplicate certificate of title. That, however, can be of no aid to defendants, as Matthews' wrongful act dates back to the time he embezzled the money furnished by Taylor. What happened in 1934 can be of little concern, as the actual—the intrinsic and original—wrong was perpetrated by Matthews on or immediately after September 10, 1932. Taylor must suffer because of his misplaced confidence in the man whom he had chosen to "attend to" this affair. By reason of Matthews' fault and because of the trust misplaced in him by Taylor, defalcation was made possible. Matthews' promise to Taylor was that "the proceeds of your [Taylor's] mortgage should pay that [plaintiffs'] mortgage."

We think the general rule stated in Murphy v. Becker, 101 Minn. 329, 332, 112 N. W. 264, 265, is applicable: "Where a mortgagee turns over the entire amount of the mortgage loan to a broker through whom the loan has been negotiated, the mortgagee thereby constitutes the broker his agent for the purpose of taking up a prior mortgage." The quoted language was later followed and applied in Danielson v. Tessman, 178 Minn. 514, 518, 227 N. W. 852.

■ On the subject of "Implied or ostensible authority to receive payments of principal of one who has authority to receive payments of interest," see Ulen v. Knecttle, 50 Wyo. 94, 58 P. (2d) 446, 111 A. L. R. 565, and cases cited under annotation, p. 578, *et seq.* At p. 579 the author states the general rule to be "that authority to receive payments of interest on an obligation, or the actual receipt of such payments with the acquiescence of the obligee, does not of itself give an agent implied or ostensible authority to receive payments of principal." Our own cases are cited at p. 580. And at

p. 586 it is said that "an agent authorized to receive payments of interest, or who had actually received such payments with the acquiescence of the obligee, has been held without implied or ostensible authority to receive payments of principal, although the agent also negotiated the loan or made the investment for the obligee, in the following cases." The author lists numerous cases, including the following decided by this court: Trull v. Hammond, 71 Minn. 172, 73 N. W. 642; White v. Madigan, 78 Minn. 286, 80 N. W. 1125; State v. Lawrence, 130 Minn. 10, 153 N. W. 123. The mentioned cases support the author's statement.

■ The court in its memorandum, as a basis for apportioning the loss occurring because of Matthews' embezzlement, was of opinion that at the time the Heinens executed the note and mortgage payable to the Taylors, Matthews was the agent for both the Taylors and the plaintiffs; that between the date Matthews received Taylor's money, September 10, 1932, and the 20th of that month, Matthews had misappropriated out of the funds intrusted to him all except $1,525.01, which sum the court concluded should be applied upon plaintiffs' mortgage. This, so the court thought, left the situation in such shape that Taylor's note "was without consideration to the extent of $974.99." Inasmuch as Taylor had later collected $500 from the borrowers, the court apportioned the remaining $2,000 between plaintiffs and Taylor in the proportion mentioned in the judgment, $1,208.99, as a first mortgage to plaintiffs, and $791.01 as a second mortgage to the Taylors.

From what already has been said we think the reasoning employed by the court is obviously erroneous. No such apportionment is possible. If the money intrusted to Matthews by the Taylors came into his hands as agent for plaintiffs that should have ended plaintiffs' suit. That, however, is not what happened nor what was intended. Everyone having anything to do with this deal knew just what was wanted, i. e., a new loan from Taylor, the proceeds of which were to be used by Matthews as the trusted agent of the Taylors to bring about the payment of plaintiffs' mortgage and securing a satisfaction thereof.

It is our view, and we so hold, that the judgment must be reversed with directions to the court below to amend its findings of fact and conclusions of law so as to award plaintiffs the full amount of their mortgage debt with interest and costs of foreclosure.

So ordered.

MR. JUSTICE STONE, on account of illness, took no part in the consideration or decision of this case.

UPON APPLICATION FOR REARGUMENT.

On March 16, 1938, the following opinion was filed:

PER CURIAM.

Defendants Heinen and wife have petitioned for a rehearing "on the question of the rights of the defendants Heinen as against the defendants Taylor, resulting from the decision of this court." They do not seek a review otherwise. The basis for the motion is that the loss due to Matthews' embezzlement must fall on the Taylors, hence that we should say so now and thereby end the litigation.

Plaintiffs alone appealed. Necessarily, then, only their rights, as opposed to those of defendants, were here for adjudication. We did not, nor could we, absent appeal by any defendant, go beyond the issue so presented. Whatever the conflicting rights and remedies available thereto are, as between the defendants, is not for us but for the trial court to first determine. The limit of our jurisdiction and consequent duty is to "correct errors injuriously affecting the appellant." 2 Am. Jur., Appeal and Error, § 152. We cannot, as matters now stand, determine these conflicting claims "because so to do would be to give one not appealing a right of review obviously not his." Walsh v. Kuechenmeister, 196 Minn. 483, 491, 265 N. W. 340, 344.

Petition denied.