[1] Reported in 4 N.W.2d 353.
On October 25, 1930, Fred W. Hencke died testate in Los Angeles, California, which was his domicile, leaving him surviving his daughter Harriet, his adopted daughter, Marion, his sister, Ida M. Barthell of Ann Arbor, Michigan, and numerous remote blood relatives.
By his will, dated May 2, 1930, after directing that his debts be paid, the testator devised and bequeathed his homestead in Los Angeles and his clothing, jewelry, household furniture, furnishings, and the like to Harriet and the residue of his property to the Bank of Italy National Trust and Savings Association, now the Bank of America National Trust and Savings Association, in trust to collect the rents and interest, to pay the net income, and at *Page 410 
the termination of the trust to distribute the principal to certain named persons and institutions.
The trustee was directed to pay the testator's sister, Ida M. Barthell, $140 per month during her life, but that if her husband predeceased her she Was to have in lieu of such provision one-half of the net income from his property located at 122 W. Superior street, Duluth, Minnesota; to pay out of the net income $300 per month to Harriet until she should reach the age of 30 years, after which she was to receive all the net income from the trust estate, except the monthly payments directed to be made to Ida M. Barthell; upon the death of the survivor of Harriet and Ida to distribute the principal and accumulated income to Harriet's issue, and, if she left no issue surviving, to distribute the remainder 1/12 to the Jewish Orphans Home located in or near Huntington Park, California, 1/12 to the Children's Hospital at Los Angeles 1/12 to the Catholic Orphans Home of Los Angeles, 1/12 to the German Lutheran Church of Los Angeles, and two-thirds to his blood relatives in accordance with the laws of succession of the state of California in force at the date of his will.
The will also provided:
"The Trustee may sell, exchange, convey, lease, mortgage, hypothecate, or otherwise dispose of the trust estate, or any part thereof, as to it may seem best, andmay substitute other property for any portion thereof sold or otherwise disposed of, and shall loan and reloan, invest and reinvest the trust estate in such securities, properties and investments as, in its judgment, it may deembest for the purpose of securing the maximum of income, consistent with reasonable safety. * * *" (Italics supplied.)
Further, it provided: "It is my wish that my property located at 122 W. Superior Street, Duluth, Minnesota, shall not be disposed of during the lives of my daughter Harriet Hencke, and my sister Mrs. Ida M. Barthell."
It also contained a so-called spendthrift provision to the effect that no beneficiary under the will should sell, assign, pledge, transfer, *Page 411 
or subject to liability either the principal or income of the trust estate.
The will recited that the provision for Ida M. Barthell was made pursuant to the testator's father's request at the time of his death.
The trustee was also named as executor under the will. The executor was not given any of the powers which were given to, the trustee.
The will was admitted to probate in Los Angeles, and the executor named was appointed and qualified.
Subsequently, on February 24, 1931, proceedings were had in the probate court of St. Louis county under Mason St. 1927, §§ 8759-8762, in which the will was admitted to probate as a foreign will and the First and American National Bank of Duluth was appointed and qualified as administrator c. t.a.
No trustee under the will was appointed either in California or in this state.
The decedent believed he was a rich man, but subsequent events have shown that he was mistaken. His California estate was appraised and inventoried at a sum in excess of $97,600, of which $91,000 was real estate which was lost through mortgage foreclosures. The net estate was insufficient to pay the costs of administration and claims, among which were two judgments, one in excess of $6,900 in favor of one Finnall as assignee, and another in excess of $4,300 in favor of one Forster.
It turned out that the decedent was not the sole owner of the Superior street property in Duluth. In a rather complicated litigation, Ida M. Barthell claimed that decedent as trustee under his father's will held their father's stock of a corporation which owned the Superior street property in trust for his and her benefit; that decedent wrongfully in breach of trust acquired title to the property in his own name and that she was entitled to be restored to her rights. Pursuant to stipulation, the litigation was settled by the entry of judgment, which so far as here material decreed that the First and American National Bank be appointed *Page 412 
successor trustee of decedent under his father's will; that as such trustee it was entitled to 495/1000 of the property in trust; and that as such trustee it pay to Ida out of the income therefrom the sum of $140 per month for 15 months and any excess to itself as administrator c. t. a. of decedent. By the stipulation made part of the judgment, Ida waived and released all her rights under decedent's will. Instead of the entire Superior street property which decedent devised, his trustee as the result of the litigation with Ida took only 505/1000 thereof.
The Superior street property is a valuable piece of city property free from encumbrance and under long-term lease about to expire in a few years. It yields $270 per month rent, which includes the rent on the fractional 505/1000 interest and all rent in excess of $140 per, month paid to the bank as successor trustee of the 495/1000 interest. The lessee pays the taxes.
Administration was had on decedent's estate in the same manner as in the case of a resident decedent. On February 24, 1931, the day decedent's will was admitted to probate here, the probate court, pursuant to statute, by order of which due notice was given, limited the time within which creditors could file claims until August 24, 1931. No claims were filed. On July 24, 1937, approximately five years and eleven months after the period for filing claims had expired, the California judgment creditors, Finnall and Forster, appeared and filed their petitions for an extension of time within which and for leave to file their claims here. On December 21, 1937, the probate court denied their petitions.
Afterwards, Finnall and Forster filed petitions for an order directing the decedent's representative c. t. a., as ancillary administrator in Minnesota, to transmit to the domiciliary representative in California sufficient funds to pay their claims.
The California representative also filed a similar petition for an order directing the Minnesota representative to sell the decedent's real estate in St. Louis county, Minnesota — the Superior street property — and, after payment of the expenses of administration here, to transmit to the domiciliary representative in California *Page 413 
the proceeds of such sale and the rents from said land amounting to over $13,000, which at the time consisted in part of cash and in part of United States securities, in which the same were invested pending administration.
On January 12, 1933, Harriet died in Los Angeles testate without living issue. Her representative here petitioned the probate court to direct the decedent's representative c. t.a. to pay to her the sum of $6,345.68 as the amount due to Harriet during her lifetime as a legacy in the form of an annuity.
On June 9, 1939, the probate court made an order in all things granting the petition of Harriet's representative and denying the petitions of the California representative, Forster, and Finnall, to transmit local assets to the domiciliary representative in California.
From this order, separate appeals to the district court were taken by decedent's representative c. t. a., the California representative, Forster, Finnall, and each of the California institutions which were to receive 1/12 in remainder. The district court dismissed the appeals of Forster and Finnall. From the order of the district court, separate appeals were taken by Forster and Finnall. Judgment was entered in the district court on the other appeals affirming the probate court. The California representative appeals from the judgment.
Pending the appeal Harriet's representative died. The application to substitute her administratrix c. t. a. as a party respondent is granted.
The assignments of error are reducible to the following contentions: (1) That it was the duty of the ancillary representative in Minnesota to sell the decedent's real estate under order of the probate court and transmit the proceeds to the domiciliary representative in California; (2) that the rents from the real estate are personal property and as such should be so transmitted; (3) that, since the trustee has the power to sell, the Minnesota real estate should be treated as personalty under the doctrine of equitable conversion and should be in fact converted into cash *Page 414 
by an exercise of the power of sale and the cash transmitted to the domiciliary representative; and (4) that the district court erred in affirming the order of the probate court directing the payment of the $6,345.68 to Harriet's representative.
1. The contention is that land in this state is assets for the payment of debts of the decedent and that, where there are no claims allowed or remaining unpaid in the ancillary administration in this state and there are unpaid claims allowed in the administration at the decedent's domicile, the ancillary representative should reduce the property in this state to cash and transmit the same to the domiciliary representative for settlement and distribution.
The administration of a foreign will under Mason St. 1927, §§ 8759-8762 (now Mason St. 1940 Supp. §§ 8992-64 and 8992-65), proceeds the same as if the original probate proceedings had been instituted here. In re Southard's Will,48 Minn. 37, 50 N.W. 932. Claims may be filed against the nonresident's estate the same as against that of a resident decedent. The statutes relating to the filing of claims apply to resident and nonresident creditors alike. State ex rel. Security Trust Co. v. Probate Court, 67 Minn. 51, 69 N.W. 609,908; State ex rel. Beals v. Probate Court, 25 Minn. 22; 3 Dunnell, Dig. Supp. § 3679i. Under Mason St. 1940 Supp. §§ 8992-144 to 8992-163, a sale of a nonresident's real estate may be authorized in the course of administration the same as in the case of a resident decedent. State ex rel. Security Trust Co. v. Probate Court, 67 Minn. 51, 69 N.W. 609,908, supra. In Boeing v. Owsley, 122 Minn. 190, 199,142 N.W. 129, 132, we held that the statutes contemplated a sale of a nonresident's real estate only "for debts and charges to which it is subject under the laws of this state." In accord, Hobson v. Payne, 45 Ill. 158. We have no statute which expressly authorizes an ancillary representative here to sell real estate of a nonresident decedent and to transmit the proceeds of the sale to the domiciliary representative. *Page 415 
Distribution of the property of a nonresident decedent in ancillary administration here is governed by Mason St. 1940 Supp. § 8992-66, which reads:
"The estate of a nonresident decedent shall be administered in the same manner as an estate of a resident decedent. Upon the payment of the expenses of administration, of the debts and other items here proved, and of the inheritance taxes, the residue of the personalty shall be distributed according to the terms of the will applicable thereto; or if the terms of the will be not applicable thereto, or if there be no will, it shall be distributed according to the law of the decedent's domicile; or the court may direct that it be transmitted to the domiciliary representative to be disposed of by him. The real estate not sold in the course of administration shall be assigned according to the terms of the will applicable thereto, or if the terms of the will be not applicable thereto, or if there be no will, it shall descend according to the laws of this state."
The construction of the statute was settled in Boeing v. Owsley, 122 Minn. 190, 142 N.W. 129, 132, supra, where we construed R. L. 1905, § 3687, the statutory predecessor of § 8992-66, and gave its history to the date of that decision. We there held that the real estate of a nonresident not sold in the course of administration is to be assigned under our law either under the will, if there be one, or under our statutes of descent. We said that "the statute merely propounds rules of conflict of laws, codifying as to personalty the rule laid down in Putnam v. Pitney [45 Minn. 242,47 N.W. 790, 11 L.R.A. 41] supra, and declaring as to realty the existing law. In our opinion, § 3687 must be taken in the setting given it by the Code, as dealing solely with the administration of estates, and likewise in connection with the general statutes of descent and distribution; and when so construed it merely declares that the real property disposed of by the will of a nonresident shall be assigned according to the terms of the will, subject, however, to such restrictions and conditions as are *Page 416 
imposed by any other statute of this state upon testamentary dispositions of land generally, unless there is some particular reason why the latter should not be read into the former."
The 1905 statute was reënacted as part of Mason St. 1940 Supp. § 8992-66, without substantial change except for the addition of the sentence, "The estate of a nonresident decedent shall be administered in the same manner as an estate of a resident decedent." The reënactment of the 1905 statute without substantial change adopted the prior construction thereof. Christgau v. Woodlawn Cemetery Assn. 208 Minn. 263,273, 293 N.W. 619. The addition of the sentence quoted above serves to underscore the legislative intention to adopt the prior construction.
A state has the undoubted power to regulate the transmission, administration, and distribution of property, real and personal, having a situs within its borders regardless of the domicile of the owner. City Bank Farmers Trust Co. v. Schnader,293 U.S. 112, 55 S.Ct. 29, 79 L. ed. 228; Washburn v. Van Steenwyk, 32 Minn. 336, 20 N.W. 324. A statute providing for the distribution of a nonresident's property makes an ancillary administration independent of the domiciliary administration. To the extent that distribution of a nonresident's estate is governed by local law, ancillary administration as such is abolished. Richardson v. Neblett, 122 Miss. 723, 84 So. 695,10 A.L.R. 272 (personalty). Where, as here, the statute directs the disposition of the real estate of nonresidents without providing for the sale of the same and transmission of the proceeds by the ancillary to the domiciliary representative, such a sale and transmission of assets is unauthorized, and the disposition under the ancillary administration must be made according to the direction of the statute. Kelly v. Dyer,359 Ill. 46, 194 N.E. 255; Irey's Estate, 11. Weekly N. (Pa.) 207. Where there has been a sale for purposes of partition, transmission of the proceeds has been denied, Headen v. Cohn,292 Ill. 210, 126 N.E. 550; Smith v. Smith, 174 Ill. 52,50 N.E. 1083, 43 L.R.A. 403, especially where, as here (see Mason St. 1940 Supp. § 8992-146; Kietzer v. Nelson, 157 Minn. 463,196 N.W. 641), the *Page 417 
proceeds of the sale are impressed with the character of realty for purposes of distribution. In re Estate of Schram,132 Neb. 268, 271 N.W. 694.
There are cases which have reached a contrary result under statutes differing from ours or by holding that there was either a conversion in fact or an equitable conversion of realty into personalty. None of them involves distribution under a statute similar to § 8992-66, directing that a nonresident's property be assigned according to the local law.
The case of In re Livingston's Estate, 91 Mont. 584,9 P.2d 159, 90 A.L.R. 1036, was decided under the statutes of Montana which, in express terms, authorize the sale of nonresident's realty and transmission of the proceeds to the domiciliary by the ancillary representative. We have no such statute. Decision in the Livingston case was also based on the ground that the will there under consideration provided for a conversion of the realty into personalty and that the proceeds could be transmitted as personalty under well settled rules. The will here contains no such provision. There was another ancillary administration of the Livingston will in Illinois, where the court distinguished the decision in the Montana case upon the grounds that the Montana statute expressly authorized a sale and transmission of proceeds which the Illinois statute, like ours, does not, and that the will provided for an equitable conversion of the realty into personalty. Kelly v. Dyer, 359 Ill. 46, 57, 194 N.E. 255, supra. The Illinois court refused to adopt the views of the Montana court that the will provided for a conversion of realty into personalty for purposes of distribution.
Decision in Dow v. Lillie, 26 N.D. 512, 144 N.W. 1082,1086, L.R.A. 1915D, 754, was controlled by North Dakota statutes which provided that the entire estate of a decedent may be sold to pay his debts and which "authorized the sale of real estate where such is necessary to pay debts duly proved in a foreign jurisdiction." Our statute permits a sale of realty only for the purpose of paying debts allowed in administration here. The *Page 418 
Nebraska court refused to follow Dow v. Lillie in the case of In re Estate of Schram, 132 Neb. 268, 271 N.W. 694,supra.
In the case of In re Estate of Gable, 79 Iowa, 178,44 N.W. 352, 353, 9 L.R.A. 218, a nonresident's real estate was sold in the course of ancillary administration to pay debts, and the surplus, after payment of expenses of administration and of debts allowed in the ancillary administration, was ordered transmitted to the domiciliary representative. The case is distinguishable. First, the court pointed out "that the duties of the ancillary administrator are not prescribed by statute." Here the statute, § 8992-66, definitely prescribes the duty of an ancillary representative and provides for the disposition of the real estate of nonresidents. Furthermore, the court there held that the sale of the land converted the land into money. In this state a sale of a decedent's real estate under order of the court does not work a conversion of realty into personalty. Mason St. 1940 Supp. § 8992-146. In Kietzer v. Nelson, 157 Minn. 463, 196 N.W. 641, 642, supra, we said:
"For the purpose of determining the rights of the heirs and of those claiming under them, the proceeds of the real estate which will go to them is treated and considered as real estate, not as personal property; and they will take it, not as distributive shares of the personal property, but by virtue of, and as a substitute for, their respective interests in the real estate."
The Gable case is in direct conflict with our rule. The Illinois court disapproved the Gable case in Smith v. Smith,174 Ill. 52, 50 N.E. 1083, 43 L.R.A. 403, because of its conflict with the Illinois rule, which is the same as ours, that a sale of realty under order of court does not convert it into personalty for purposes of distribution. Lastly, there has been no sale here and hence no conversion even under the rule of the Gable case. Consequently, we cannot follow it.
Wiggins v. Mayer, 57 App. (D.C.) 293, 22 F.2d 869, was decided under statutes authorizing a sale of a nonresident's real *Page 419 
estate to pay debts wherever allowed and permitting a foreign representative to apply for administration or have an ancillary administrator appointed to pursue such a remedy in the probate court. Of course, such cases are not in point under our statutes and decisions.
There are cases holding that where a will provides for the conversion of realty into money the proceeds of the sale should be transmitted, as In re Middleby's Estate, 249 Pa. 203,94 A. 820, L.R.A. 1915F, 1041, and that, where a conversion occurs by a sale under the law of the place where the realty is situated, the proceeds of a sale transmitted by the ancillary to the domiciliary representative will be treated as personalty in the domiciliary administration, as in Wolfe v. Lewisburg Trust S.D. Co. 305 Pa. 583, 158 A. 567, 81 A.L.R. 660
(proceeds of a sale of realty in ancillary administration in North Dakota were treated as personalty at decedent's domicile in Pennsylvania upon the ground that conversion took place under North Dakota law). True, there is dictum in the Wolfe case that a sale of land results in a conversion of realty into personalty, citing In re Middleby's Estate, supra, but that case involved an equitable conversion under a will and does not sustain the dictum. Those cases involve situations so clearly different from the case at bar that we do not deem it necessary to further distinguish them.
The statutory rule of § 8992-66 that the real estate of a nonresident not sold in the course of administration shall be assigned according to the terms of the will governs the instant case. Decisions from other jurisdictions involving different statutory and testamentary provisions are, as we have pointed out, not in point.
2. The rents derived from the real estate are subject to the same disposition as the land itself. Rents follow the title to land. Boeing v. Owsley, 122 Minn. 190, 205, 142 N.W. 129,supra; Bowen v. Willard, 203 Minn. 289, 281 N.W. 256.
3. The will did not give the executor any power to sell. It gave the trustee discretionary power to sell the property in question *Page 420 
after the deaths of testator's daughter Harriet and his sister Ida. The trusteeship is vacant.
Where a will appoints an executor and a trustee and defines the powers and duties of each, the executor has no right to exercise a power of sale devised exclusively to the trustee. Simpson v. Cook, 24 Minn. 180, 187. This is such a case. The Minnesota representative did not have a power to sell which the court could direct him to exercise.
4. Appellants contend that under the doctrine of equitable conversion their rights relate not to realty, but to personalty — the proceeds of the sale of the realty — and that to effectuate their rights the realty should be sold and the proceeds transmitted. The claim of equitable conversion is predicated upon the trustee's power of sale and the direction to the executor to pay debts. The testator devised to the trustee only a discretionary power of sale limited by a precatory direction not to sell during the lives of Harriet and Ida. A sale by the trustee under the power of sale was thus postponed because the testator contemplated that both Harriet and Ida would survive him for some considerable time, and he desired that they should have an assured income from the rents of the Superior street property.
An equitable conversion is a constructive, not an actual, change of realty into personalty or personalty into realty. The doctrine is based on the maxim that equity regards that as done which ought to have been done. It is a judicial device for giving effect to the intention of testators, donors, and perhaps others. See Greenman v. McVey, 126 Minn. 21,147 N.W. 812, Ann. Cas. 1915D, 430.
An equitable conversion results only where there is a positive and imperative direction to sell at all events. Greenman v. McVey, 126 Minn. 21, 147 N.W. 812, 814, Ann. Cas. 1915D, 430, supra. A mere power of sale does not work an equitable conversion. Under such a power the title remains in the heirs, devisees, and legatees until divested by an actual sale. Greenman v. McVey, supra, where we said: "Giving a power of sale does not *Page 421 
amount to a direction that there be a sale"; Ness v. Davidson,49 Minn. 469, 52 N.W. 46; Pennsylvania Company's Appeal, 168 P. 431, 32 A. 25, 47 A.S.R. 893.
A direction to pay debts in the course of administration is not one to convert the testator's realty into money and to distribute the money as personalty. Such a direction merely states what the law requires and does not make the debts a charge upon the realty. Estate of Boyd v. Thomas, 162 Minn. 63,202 N.W. 60; Kelly v. Dyer, 359 Ill. 46, 194 N.E. 255,supra.
For lack of the requisite testamentary direction to sell realty and to convert it into money, there was no equitable conversion here.
5. Under Mason St. 1940 Supp. § 8992-107, a claim against an estate is barred absolutely unless filed in the probate court within five years after the decedent's death. After the five years the probate court has no jurisdiction to receive or allow a claim. In re Estate of Paulson, 208 Minn. 231,293 N.W. 607; In re Estate of Borlaug, 201 Minn. 407, 276 N.W. 732; In re Estate of Anderson, 200 Minn. 470, 274 N.W. 621,112 A.L.R. 287. The provisions relative to filing claims in ancillary administration in this state apply to both resident and nonresident creditors. State ex rel. Security Trust Co. v. Probate Court, 67 Minn. 51, 69 N.W. 609, 908, supra;
State ex rel. Beals v. Probate Court, 25 Minn. 22,supra. There was no error in denying the California judgment creditors leave to file their claims, because more than five years had elapsed since the decedent's death and the court was then without power, much less discretion, to receive and allow their claims.
6. For lack of any resulting prejudice to them from such action, neither the California representative nor the California judgment creditors have any standing to complain of the allowance of the claim of Harriet's personal representative. Since the California representative is not entitled to have the estate transmitted to it and the California judgment creditors have no enforceable claim against the property in the hands of the Minnesota representative, they are not affected one way or the other by allowance *Page 422 
of the claim. Not being aggrieved by the decision, they will not be heard to complain. State ex rel. Nordin v. Probate Court, 200 Minn. 167, 273 N.W. 636.
7. The California charities named as beneficiaries are respondents here. They have not taken appeals, but allege errors which they ask us to review. Only an appellant can assign error. A respondent who has not taken an appeal so as to become an appellant in his own right cannot assign error in the appellate court. Dehnhoff v. Heinen, 202 Minn. 295, 303,278 N.W. 351.
8. The respondent personal representative of Harriet asks us to decide that there is no longer any necessity for a trustee to carry out the terms of the will, because Harriet is dead and Ida M. Barthell no longer has any interest in the estate because of the settlement which she made with the Minnesota representative, and that the probate court may order final distribution of the estate to those ultimately entitled to it without the intervention of a trustee. Since a respondent is not entitled to assign error for the reasons stated in the preceding paragraph, we cannot consider the point.
9. The order dismissing the appeals of the California judgment creditors from the probate to the district court is appealable. In re Guardianship of Jaus, 198 Minn. 242,269 N.W. 457.
We affirm both the order and the judgment.
Affirmed.
MR. JUSTICE STONE, absent on account of illness, took no part in the consideration or decision of this case.
 UPON APPLICATION FOR REARGUMENT.
On June 5, 1942, the following opinion was filed: